OPINION
{¶ 1} Appellant, Cathryn L. Wescott, appeals from the March 19, 2003 judgment entry, in which the Lake County Court of Common Pleas granted summary judgment in favor of appellees, Associated Estates Realty Corporation ("AERC"), Rosemary White ("White"), and William Porter ("Porter").
 {¶ 2} Appellant filed a complaint on May 19, 2000, against appellees alleging reverse discrimination, hostile work environment, intentional infliction of emotional distress, respondeat superior, retaliation, and defamation of character in Case No. 00CV000860. AERC and Porter filed an answer on October 19, 2000, and AERC filed a counterclaim on that same date. In the counterclaim, AERC alleged that appellant was unjustly enriched to the detriment of AERC, that she wrongfully converted AERC's funds to her own benefit and use, that she violated the rules of AERC, and that she engaged in fraud and breached her fiduciary duty to AERC. White filed an answer on October 23, 2000. Appellant filed an amended complaint on December 26, 2000, and added retaliation to her complaint.
 {¶ 3} AERC is located in Cuyahoga County and is engaged in the management of real estate properties. Appellant was hired by AERC on June 30, 1998, as a customer service representative at an apartment complex. She lived at the complex during her employment with AERC. Appellant's duties included rent collections, evictions, and delinquency reports. When she first began working at the apartment complex, her supervisor was Judy Clark ("Clark"), a Caucasian female. Appellant was given a ninety-day review on September 25, 1998. Clark evaluated her performance as below expectations because she occasionally exhibited behaviors expected for the position, but her behavior was inconsistent or required improvement.[1]
 {¶ 4} In June 1999, Francine Gray ("Gray"), an African American woman, became appellant's supervisor. However, in July 1999, AERC replaced Gray with White, another African American woman. White was the manager of the apartment complex and appellant's immediate supervisor.
 {¶ 5} Appellees contend that appellant performed her job incompetently by not initiating eviction proceedings in a timely manner and not collecting rent from tenants. Specifically, on October 20, 1999, White sent a memorandum to Porter, the asset specialist, regarding appellant's performance. White indicated that there was an ongoing problem with rent collections, and that appellant was not receptive to any intervention. In fact, appellant admitted in her deposition that three-day notices should have been sent quicker and "move-outs" should have been processed faster. Thereafter, on October 21, 1999, White sent appellant a memorandum addressing her poor performance with rent collections, delinquency, evictions, and the move-out process. In that memo, White mentioned the "numerous complaints and concerns from residents, and the Corporate office * * *." In the memo, White instructed appellant to train Gail Erich ("Erich") on the move-out process. However, appellant admitted that she did not train Erich.
 {¶ 6} Appellant alleged that White referred to her as "whitey," and that White favored African American employees by allowing them to work overtime. Appellant claimed that in October 1999, she reported claims of race discrimination by White to Porter. She also wrote a letter to Porter on October 21, 1999, outlining her complaints. Appellant believed that this prompted her suspension from work. However, AERC asserted that on November 10, 1999, a leasing consultant informed White that appellant had made unauthorized rent deductions from her own rent account. As a result, she was suspended pending an investigation of the deductions.
 {¶ 7} Appellant met with Porter and White, and appellant brought notes with her regarding the issues she wanted to discuss. Yet, nowhere in the notes was there any mention about racial harassment or discrimination.
 {¶ 8} According to appellant, around November 15, 1999, she told Porter she was going to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") because of her suspension and probation. Appellant contends that Porter attempted to convince her not to file a claim with the EEOC, but she and Porter were unsuccessful in trying to settle the matter. Appellant then told Porter that she intended to file the complaint with the EEOC.
 {¶ 9} Appellant was reinstated on November 17, 1999, on a probationary basis. She was given a performance probation memorandum upon her return. Appellant was terminated on November 23, 1999, and claims that she was fired in retaliation for the complaint she would be filing with the EEOC. AERC maintains that before appellant returned to work during her probationary period, she agreed to accept partial payment plans from residents in the apartment complex without the authorization of a property manager.
 {¶ 10} Appellant filed a charge of discrimination with the EEOC and the Ohio Civil Rights Commission ("OCRC") on November 30, 1999, alleging that she believed that AERC, White, and Porter had retaliated against her. On August 29, 2000, appellant initiated Case No. 00CV001396 against only AERC alleging that AERC, through its employees, had created a hostile work environment, and that as a result, she suffered a loss in earnings and harm to her reputation. This case was consolidated with Case No. 00CV000860 for trial purposes.
 {¶ 11} On May 15, 2001, White filed a motion for summary judgment. On that same date, AERC and Porter filed a motion for summary judgment. On June 15, 2001, appellant filed a brief in opposition to the motions for summary judgment. On June 27, 2001, appellant requested additional time to conduct discovery and a motion to stay the judgment solely on the defamation claim. The trial court denied appellant's motion for limited discovery and stay as to the defamation claim on July 13, 2001, but the trial court stayed all of the proceedings for sixty days in a July 11, 2001 entry. On March 19, 2003, the trial court granted appellee's motion for summary judgment. It is from that entry that appellant has filed the instant appeal and now raises the following as error:[2]
 {¶ 12} "[1.] The trial court abused [its] discretion when it denied [appellant's] [m]otion [f]or [a]dditional [t]ime [t]o [c]onduct [l]imited [d]iscovery and for ordering the out of county deposition of [appellant].
 {¶ 13} "[2.] The trial court erred to the prejudice of [appellant] in granting [appellees'] [m]otion [f]or [s]ummary [j]udgment."
 {¶ 14} For the first assignment of error, appellant alleges that the trial court erred when it denied her additional time to conduct discovery and when it ordered her to attend her deposition in a different county from which the matter was venued.
 {¶ 15} Civ.R. 56(F) provides that: "[s]hould it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
 {¶ 16} Thus, Civ.R. 56(F) requires a party seeking a continuance to provide the trial court with sufficient reasons why it "`cannot present by affidavit facts sufficient to justify its opposition.'" Denham v. New Carlisle (2000),138 Ohio App.3d 439, 443, quoting Gates Mills Invest. Co. v. Pepper Pike
(1978), 59 Ohio App.2d 155, 169.
 {¶ 17} The trial court has broad discretion in regulating the discovery process and, therefore, the trial court's decisions on discovery matters will not be reversed absent an abuse of discretion. Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, 592; Kelley v. Ford Motor Credit Co. (2000),137 Ohio App.3d 12, 18. Such a standard of review mandates affirming a trial court's decision absent a showing that the judge acted unreasonably, unconscionably or arbitrarily. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169. An appellate court may not substitute its judgment for that of the trial court. In re JaneDoe 1 (1991), 57 Ohio St.3d 135, 137-138.
 {¶ 18} In the case sub judice, appellant argues that the trial court abused its discretion by denying her request for additional time to conduct discovery on the defamation claim. Yet, appellant has not sufficiently indicated how additional time to conduct discovery would have aided her in rebutting appellees' summary judgment motion on that issue. See, generally, PennTraffic Co. v. AIU Ins. Co. (Sept. 10, 2001), 4th Dist. No. 00CA653, 2001 WL 1085242.
 {¶ 19} Furthermore, we note that appellant filed her defamation claim on May 19, 2000, and the discovery cutoff date was not until May 4, 2001. Therefore, appellant had a little less than one year to conduct discovery on that issue. She had time to depose those witnesses relevant to her defamation claim, but she did not do so. It was over a month after that time passed that she filed a motion for additional time to conduct discovery.
 {¶ 20} It is our position that although appellant attacks the trial court's denial of her motion for additional time to conduct discovery, she advances her defamation claim based on unsupported allegations. She also provides no specific argumentation as required by App.R. 12 and App.R. 16, nor does she offer any substantive material to support her summary judgment claim. Consequently, we conclude that the trial court did not abuse its discretion by denying appellant's request for additional time to conduct discovery.
 {¶ 21} In this assignment of error, appellant also argues that the trial court erred when it ordered her to attend her deposition in Cuyahoga County even though the litigation was pending in Lake County. However, since the trial court enjoys broad discretion in regulating matters relating to discovery, its decision will not be reversed absent an abuse of discretion.Mauzy, 75 Ohio St.3d at 592.
 {¶ 22} Here, the record reveals that appellant did not reside in Lake County at the time the notice of deposition was received. In fact, she was not even living in Ohio. Further, appellant has not demonstrated that she was prejudiced by being deposed in Cuyahoga County. Therefore, it is our position that the trial court did not abuse its discretion. Appellant's first assignment of error lacks merit.
 {¶ 23} In the second assignment of error, appellant asserts that the trial court erred in granting appellees' summary judgment motion since she presented genuine issues of material fact to support a prima facie case of reverse discrimination and retaliation.
 {¶ 24} Summary judgment may be granted where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385.
 {¶ 25} The Supreme Court of Ohio stated that: "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying thoseportions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.) Dresher v.Burt (1996), 75 Ohio St.3d 280, 296.
 {¶ 26} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).
 {¶ 27} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711. The Brown court stated that "* * * we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 28} Appellant claims that she was discriminated against based on her race. When an individual brings a discrimination claim in Ohio for violating R.C. 4112.02, the Supreme Court of Ohio has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000 et seq., Title 42, U.S. Code, is generally applicable * * *." Plumbers Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. RightsComm. (1981), 66 Ohio St.2d 192, 196.
 {¶ 29} R.C. 4112.02(A) provides as follows:
 {¶ 30} "It shall be an unlawful discriminatory practice:
 {¶ 31} "(A) For any employer, because of the race * * * of any person, to discharge without just cause, * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 32} The starting point for judicial inquiry into a complaint alleging discrimination is McDonnell Douglas Corp. v.Green (1973), 411 U.S. 792. "McDonnell established a flexible formula to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees." Plumbers, supra,66 Ohio St.2d at 197. The first step is for a complainant to prove a prima facie case of discrimination. The basic elements of a discrimination case are that: (1) the employee belongs to a protected class; (2) the employee is discharged; (3) the employee is qualified for the position; and (4) the employee is replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. Id.
 {¶ 33} Appellant has the burden of establishing a prima facie case of discrimination in violation of R.C. 4112.02(A) by a preponderance of the evidence. Omobien v. Ohio Civ. RightsComm. (1993), 89 Ohio App.3d 100, 103-104. If appellant succeeds in proving a prima facie case, the burden shifts to appellees to articulate some legitimate, nondiscriminatory reason for the employee's termination. Plumbers, 66 Ohio St.2d at 197. If appellees carry their burden, appellant must demonstrate that the reasons offered by appellees were not the true reasons, but were a pretext for discrimination. Id. at 197-98.
 {¶ 34} In the instant matter, it is our determination that appellant failed to present any direct evidence to raise a genuine issue of material fact on racial discrimination in the workplace. First, we note that appellant was terminated by Porter, a Caucasian male. Although appellant proved that she was discharged from her employment, she did not demonstrate that the reason for her termination was racially motivated. In fact, the evidence presented shows that she was fired for poor performance. Appellees established that appellant was fired for accepting partial rent payments from residents without the proper authorization. Appellant also has not shown that she was replaced by a person not belonging to the nonminority class or that her discharge enabled her employer to hire such a person. Therefore, appellant cannot establish a prima facie case that she was terminated because of her race. Moreover, even though appellant alleges that White made racist remarks to her such as calling her "whitey" and commenting that white women should not wear dark polish, the evidence presented did not provide a sufficient amount of proof to demonstrate a genuine issue of material fact to support a claim of racial discrimination. Appellant has not claimed that Porter, who appellant concedes was the person who terminated her, made any discriminatory comments to her. Accordingly, we conclude that appellant has not created a genuine issue of fact regarding racial discrimination.
 {¶ 35} We now turn our attention to appellant's retaliation claim. In order to prove a prima facie case of retaliation under R.C. 4112.02(I), appellant must show: (1) she was a member of a protected class or engaged in a protected activity; (2) appellees knew of her participation in the protected activity; (3) appellees took adverse employment action against her and stated reasons that were not the true retaliatory reason; and (4) there was a causal link between the protected activity and the adverse employment action. Mack v. B.F. Goodrich Co. (1997),121 Ohio App.3d 99, 104; Chandler v. Empire Chem., Inc., Midwest RubberCustom Mixing Div. (1994), 99 Ohio App.3d 396, 402.
 {¶ 36} Once appellant presents evidence of a prima facie case of discrimination, the burden shifts to appellees to articulate a legitimate nondiscriminatory reason for their action. TexasDept. of Community Affairs v. Burdine (1981), 450 U.S. 248, 253. If appellees carry their burden, the burden shifts back to appellant to prove that the proffered non-discriminatory reasons given by appellees are a pretext. Reeves v. Sanderson PlumbingProducts, Inc. (2000), 530 U.S. 133, 143. Pretext is established by either (1) a direct evidential showing that a discriminatory reason more likely motivated appellees or (2) an indirect evidential showing that appellees' explanation is not credible.Burdine, 450 U.S. at 256. "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co. (C.A.10, 1988), 853 F.2d 768, 772.
 {¶ 37} In the case at bar, appellant has failed to prove a prima facie case for retaliatory discrimination as all of the elements of the standard are lacking. There was no evidence that appellees had knowledge of any protected activity in which appellant may have been engaged. Further, appellant did not demonstrate that she was terminated because she engaged in a protected activity. In fact, the record reveals that appellant was fired because of the deficiency in her performance. Appellant concedes that appellees told her she was being let go because of the partial rent collections without proper authorization, and her testimony establishes that she failed to follow proper rent and collection procedures. Additionally, in the counterclaim, AERC alleged that appellant was unjustly enriched, wrongfully converted AERC's funds to her own benefit, violated rules, engaged in fraud, and breached her fiduciary duty. Finally, there was no evidence to support a causal connection between any protected activity and appellant's termination with AERC.
 {¶ 38} Furthermore, viewing the evidence in a light most favorable to appellant and assuming that she had established an inference of causation, appellees then would have the burden to articulate a legitimate reason for her elimination. In this case, the evidence shows that appellant's arguments consist only of her unsupported allegations. Yet, there is no evidence before us to support this inference.
 {¶ 39} Moreover, the record reveals that appellant filed her complaint with the EEOC on November 30, 1999, which was after her November 23 termination. Since appellant has not submitted evidential material that there was any illegal discrimination by AERC, she has not raised a factual question that she was engaged in a protected activity.
 {¶ 40} Therefore, the trial court correctly determined that there was insufficient evidence presented to submit this claim to the jury since there was no evidence establishing that appellant was engaged in any protected activity. Additionally, even if appellant was engaged in a protected activity, it was not known to appellees, and there was no causal connection between her activity and her termination. Moreover, there was no evidence presented that her termination was merely a pretext for unlawful retaliation. Appellees have demonstrated that appellant was fired for legitimate, business-related reasons, i.e., her poor job performance.
 {¶ 41} Because appellant has failed to establish a genuine issue of material fact regarding the causal connection between her complaint and her termination, appellees are entitled to judgment as a matter of law. We conclude that the trial court did not err in granting summary judgment for appellees on the claim of retaliation. Appellant's second assignment of error is overruled.
 {¶ 42} For the foregoing reasons, appellant's assignments of error are not welltaken. The judgment of the Lake County Court of Common Pleas is affirmed.
Cynthia Westcott Rice, J., concurs,
William M. O'Neill, J., dissents with Dissenting Opinion.
[1] In her deposition, appellant averred that Clark evaluated her work fairly.
[2] Appellant has not appealed from the granting of summary judgment on her claims of a racially hostile work environment, intentional infliction of emotional distress, respondeat superior, or the disposition of her charge before the OCRC. Thus, those issues are clearly not before us in this appeal.