OPINION
{¶ 1} The instant appeal has been brought from a final judgment of the Lake County Court of Common Pleas. Appellants, Robert D. and Betty J. Marshall, seek the reversal of the trial court's determination to grant summary judgment in favor of appellee, Jean A. Silsby, as to all four basic claims set forth in appellants' amended complaint. For the following reasons, this court concludes that appellants have failed to demonstrate any prejudicial error in the trial court's analysis. Therefore, we affirm.
 {¶ 2} Appellants are presently married and reside in the state of Florida. Appellee is a resident of Concord, Ohio, and is the mother of Betty J. Marshall. As of February 2001, appellee was still living in the marital home that she had previously shared with Betty's father, Myron F. Silsby, prior to his death in June 1997.
 {¶ 3} At the time of his demise, Myron had a will which expressly stated that his entire estate was to be given to appellee if she had not died before him. For whatever reason, an application to admit this will into probate was not submitted to the local probate court until February 2001. At that time, Betty executed a document which provided that she was waiving her right to a formal notice to the actual filing and admission of her father's will into probate. This "waiver" document also contained an acknowledgement clause which stated that Betty had been informed that any action to contest the validity of the will had to be brought within four months. No such action was ever submitted in regard to Myron's will.
 {¶ 4} In October 2002, appellee initiated a civil lawsuit against both appellants, Robert and Betty, in the Circuit Court for Martin County, Florida. In her complaint, she asserted that appellants owed her the sum of $46,000, plus interest, pursuant to two promissory notes which had been executed in August 2001. As part of their answer to the "Florida" complaint, appellants raised three counterclaims against appellee. Each counterclaim was predicated upon the basic allegation that appellee had refused to return to Betty a certificate of deposit which Betty had transferred to appellee and Myron in 1992. It was further alleged that Betty had asked her parents to act as custodians of the certificate of deposit, and that appellee had converted the certificate to her own use after Myron had passed away.
 {¶ 5} While the Florida proceeding was still pending, appellants filed the instant action against appellee in September 2003. As the factual basis for the first two counts of their original complaint, appellants again alleged that appellee had improperly refused to return the certificate of deposit. Under their third claim, they further alleged that appellee had failed to repay certain funds which they had loaned to her in 1997 so that she was able to visit Florida for an extended period.
 {¶ 6} Even before appellee could answer the original complaint, appellants moved the trial court for leave to submit an amended complaint. Unlike the first complaint, the new complaint did not contain any allegations as to the certificate of deposit or the funds for the 1997 Florida visit. Instead, the amended complaint asserted new claims sounding in fraud, conversion, unjust enrichment, and intentional interference with an inheritance. In support of these claims, appellants alleged the following: (1) a few years prior to his death, Myron had told Betty that she would receive certain items of personal property in accordance with his will; (2) immediately before Myron's death, appellee and a second individual had conspired to induce Myron in such a manner that his estate would not be distributed in the way he had originally intended; and (3) since Myron's death, Betty had asked appellee for the items on a number of occasions, but appellee refused to give them to her. In addition to the foregoing, appellants asserted that this second "unknown" individual was exercising undue influence over appellee, causing her to act irrationally.
 {¶ 7} Once the trial court had granted appellants' motion for leave, appellee submitted her answer to the amended complaint. Approximately two months later, appellee then moved the trial court for summary judgment as to all of the claims in the new complaint. As the grounds for this motion, appellee maintained that each of the claims was barred under the applicable statute of limitations. In relation to the claim of fraud, she argued that, since appellants had alleged that the fraud had occurred prior to Myron's death in June 1997, the statute of limitations for this claim had begun to run when he had passed away; thus, the four-year limit for bringing such a claim under R.C. 2305.09 had ended in June 2001. Appellee made similar arguments in regard to appellants' claim for unjust enrichment and conversion. As to the separate claim of intentional interference with an inheritance, appellee contended that appellants' ability to contest the validity of Myron's will ended when she failed to file an action challenging the will within four months after the application to probate was submitted in February 2001.
 {¶ 8} In support of her request for summary judgment, appellee attached to her motion copies of various documents which had been filed in the 2001 probate action regarding Myron's will. These documents were accompanied by an affidavit of the attorney who had represented appellee in the probate action. In the affidavit, the attorney verified the authenticity of the other attached documents.
 {¶ 9} In their response to appellee's motion, appellants primarily argued that summary judgment could not be granted at that juncture of the case because they had not been given the full opportunity to complete discovery. In support of this argument, appellants referred to the fact that: (1) appellee had refused to schedule a date for the taking of her deposition, even though the initial request had been made months earlier; and (2) she had never responded to their request for the production of documents. As to the actual merits of the "statute of limitations" issue, appellants asserted that appellee's fraudulent behavior did not occur until after Myron's will had been submitted to probate in 2001, but that the exact nature of the fraudulent behavior could not be known until they could take appellee's deposition.
 {¶ 10} The only evidentiary material attached to appellants' response was the affidavit of Betty J. Marshall. In this document, Betty simply averred that the "wrongful taking" of the personal property promised to her by her father had occurred in 2001. She further averred that she had not been aware of any fraudulent behavior at the time of the death of her father in 1997.
 {¶ 11} After reviewing both the motion and the response, the trial court issued its written decision granting summary judgment in favor of appellee as to all claims asserted in the amended complaint. As to appellants' "discovery" argument, the trial court held that no additional discovery was needed because appellants had not stated how the "withheld" discovery was relevant to the issue of the statute of limitations. In regard to the merits of "limitations" issue, the trial court concluded that, if any fraud did occur in relation to the distribution of Myron's estate, Betty should have discovered the fraud soon after his death in 1997. Specifically, the trial court concluded that certain events had occurred in 1997 which would have caused a reasonably prudent individual to make further inquiry into the matter. Based on this, the court determined that appellants' claims were barred under the four-year statute of limitations because the time had started to run soon after Myron's death.
 {¶ 12} In now appealing the summary judgment decision to this court, appellants have assigned the following as error:
 {¶ 13} "[1] The court erred in granting summary judgment for [appellee] without allowing [appellants] to obtain any discovery.
 {¶ 14} "[2] The court erred in determining that [appellants'] claims were barred by the statute of limitations because the statute of limitations is tolled until the time of the discovery of the wrongdoer and the fraud."
 {¶ 15} Under their first assignment, appellants maintain that it was improper for the trial court to consider the merits of the summary judgment motion without permitting them to complete the basic discovery process. Essentially, they submit that, under the "spirit" of Ohio Rules of Civil Procedure, a plaintiff should not be required to defend the merits of the complaint until the opposing party has responded to any discovery requests. They further submit that, in conducting their discovery, they should not be required to specify the nature of the information they hope to obtain during the process.
 {¶ 16} As appellants correctly notes in their appellate brief, the Ohio Civil Rules contain a specific provision governing the situation in which a party cannot properly respond to a summary judgment motion until further discovery is conducted. Civ.R. 56(F) provides:
 {¶ 17} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
 {¶ 18} In interpreting Civ.R. 56(F), this court has indicated that a trial court should apply the rule liberally to ensure that the nonmoving party in any summary judgment exercise has sufficient time to discover any fact which is needed to properly rebut the argument of the moving party.King v. Zell (Dec. 31, 1998), 11th Dist. No. 97-T-0186, 1998 Ohio App. LEXIS 6364, at *10. However, the nonmoving party does not have an absolute right to be given additional discovery time in every instance. To be entitled to a continuance under the rule, the nonmoving party has the burden of establishing a sufficient reason for the additional time.Kane v. Kane, 10th Dist. No. 02-AP-933, 2003-Ohio-4021, at ¶ 14. That is, the party requesting more time must show that the additional discovery will actually aid in either the demonstration or negation of a fact relevant to an issue raised in the motion for summary judgment.King, 1998 Ohio App. LEXIS 6364, at *11.
 {¶ 19} Furthermore, this court has indicated that, because a request for additional time under Civ.R. 56(F) involves a matter of discovery, the disposition of such a request falls within the sound discretion of a trial court. Wescott v. Associated Estates Realty Corp., 11th Dist. Nos. 2003-L-059 2003-L-060, 2004-Ohio-6183, at ¶ 17. Thus, the ruling of the trial court will be upheld on appeal unless it can be shown that the decision was arbitrary, unreasonable or unconscionable. Id.
 {¶ 20} In light of the foregoing precedent, appellants' assertion that it was not necessary for them to specify the facts they needed to discover is simply erroneous. Once the summary judgment motion had been filed, any subsequent discovery had to pertain to the specific issue raised by appellee. Appellants could not use the discovery process as a "fishing expedition" to obtain any information they thought might be relevant to their general case.
 {¶ 21} As will be fully discussed under the second assignment, the dispositive issue in appellee's summary judgment motion concerned when Betty J. Marshall became aware, or should have become aware, of sufficient facts to put her on notice that appellee had acted fraudulently in regard to the items of personal property. Obviously, any facts concerning the extent of Betty's knowledge of the alleged fraud would only be actually known by her, not appellee. Accordingly, the record before us supports the conclusion that it was not necessary for appellants to obtain any further discovery from appellee in order to be able to properly respond to the "statute of limitations" question.
 {¶ 22} Consistent with this conclusion, it follows that the trial court did not engage in an abuse of discretion when it denied appellants' request for additional discovery. Hence, the first assignment in this appeal does not have merit.
 {¶ 23} Under their second assignment, appellants submit that appellee was not entitled to prevail on her summary judgment motion because the evidentiary materials before the trial court were sufficient to raise a factual dispute in relation to when the statute of limitations began to run. Specifically, they contend that their materials tended to show that Betty did not become aware of any fraud concerning the distribution of the estate of her father until sometime in 2001. Based upon this, they assert that, because they filed the instant case within two years of 2001, a jury still could have found that their claims for relief had been brought in a timely manner.
 {¶ 24} As was noted above, appellants' amended complaint before the trial court raised at least four different claims. However, in now challenging the trial court's decision to grant summary judgment, appellants have only sought the reversal of that decision as it applied to their separate claims of fraud, conversion, and intentional interference with an inheritance. Furthermore, appellants have not contested the trial court's determination that the statute of limitations for all three of these claims is governed by R.C. 2305.09. This statute provides that a legal action must be filed within four years of its accruement if the action is based upon the taking of personal property, fraud, or an injury to rights not predicated upon a contract. R.C. 2305.09(C) and (D).
 {¶ 25} In relation to the actual date of accruement of actions covered by R.C. 2305.09, the statute also has a "discovery" provision which acts to delay the running of the four-year limitation. Specifically, subsection (D) of the statute states that if the action is "for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered."
 {¶ 26} In applying the "discovery" provision of R.C. 2305.09(D) to claims of conversion and fraud, this court has stated that such claims will accrue either: (1) when the fraud is discovered; or (2) when, in the exercise of reasonable diligence, the fraud should have been discovered.Stokes v. Berick (Dec. 23, 1999), 11th Dist. No. 98-L-094, 1999 Ohio App. LEXIS 6264, at *14. In regard to the second prong of the provision, this court has further stated that the determination of "reasonable diligence" turns on whether the underlying facts were such that a fair and prudent person, using ordinary care and thoughtfulness, would conclude that further inquiry into the situation was warranted. Thut v.Thut (Apr. 13, 2001), 11th Dist. No. 2000-G-2281, 2001 Ohio App. LEXIS 1748, at *9-*10.
 {¶ 27} In the instant action, our review of the amended complaint shows that appellants' claim for intentional interference with an inheritance was expressly predicated upon an allegation of fraud; hence, it follows that the foregoing rules for deciding the accruement date under R.C. 2305.09 would apply to all three of appellants' claims.[1]
Therefore, resolution of the present "statute of limitations" question will depend upon whether the facts of this case were such that Betty J. Marshall should have discovered the alleged fraudulent behavior prior to 2001.
 {¶ 28} At the outset of our analysis, this court would again note that appellee attached to her summary judgment motion a copy of a document which appeared to be Myron F. Silsby's will. This document had been executed by Myron on April 30, 1996, more than one year prior to the date of his death. The document also contained an express clause stating that, if appellee was still alive when Myron died, his entire estate would be given to her.
 {¶ 29} In responding to the summary judgment motion, appellants did not challenge the authenticity of the "will" document in any respect. By failing to object, they essentially conceded that, if appellee did take some action to stop Betty from receiving the items of personal property, those actions had to have occurred at the time Myron's last will was written in 1996. That is, since all of Myron's property became appellee's property at the time of his death, appellee could not have committed any fraudulent behavior in regard to the disputed property after that time. As to this point, we would further note that the allegations in appellants' amended complaint were consistent with the basic proposition that appellee's alleged fraudulent behavior occurred during the period in which Myron was ill prior to his death.
 {¶ 30} As part of their amended complaint, appellants also alleged that, upon the death of her father, she began to ask appellee to give her the personal property. While the act of asking for the property might be consistent with the possibility that Betty simply was unaware of the provisions of her father's will, we would further note that appellants also alleged that Betty asked for the items repeatedly, and appellee would not give them to her. Thus, appellants' own allegations support the conclusion that Betty became aware within a short period following her father's death that there could be a problem with the distribution of the personal property.
 {¶ 31} This court would agree that a reasonably diligent person would not expect items of an estate to be distributed within six months after the passing of deceased. However, the record in the instant action shows that nearly four years passed before Myron's will was submitted to probate. Under such circumstances, this court concludes that, if a reasonably diligent person truly believed that she was entitled to receive certain items, she would have began to inquire into the matter within at least two years of the date of the death. Thus, we hold that appellee's evidentiary materials and the allegations in the amended complaint supported the finding that Betty should have discovered the alleged fraud prior to June 1999.
 {¶ 32} In responding to appellee's motion, appellants merely presented the affidavit of Betty, in which she averred that she had not been aware of the alleged fraud when her father died in 1997. While this statement might have been true, it did not conflict with the materials upon which the request for summary judgment had been made. Stated differently, Betty's statement was simply irrelevant to the question of when she should have discovered the alleged fraud if she had acted with due diligence.
 {¶ 33} As a general proposition, the moving party in a summary judgment exercise is entitled to prevail on her motion when: (1) there is no genuine issue as to a material fact remaining to be resolved; (2) the moving party is entitled to judgment as a matter of law; and (3) the nature of the evidentiary materials are such that, even when those materials are construed in a manner most favorable to the nonmoving party, a reasonable person would only reach a conclusion adverse to the nonmoving party. Werman v. Green (Mar. 30, 2001), 11th Dist. No. 2000-L-033, 2001 Ohio App. LEXIS 1555, at *3. In applying this standard on appeal, an appellate court must engage in a de novo analysis.Wescott, 2004-Ohio-6183, at ¶ 27.
 {¶ 34} Pursuant to foregoing analysis, this court holds that appellee was able to satisfy each prong of the "summary judgment" standard in regard to the issue of when Betty should have discovered the existence of the alleged fraud. Specifically, the undisputed facts demonstrate that, if Betty had been acting with reasonable diligence, she would have discovered the alleged fraud by June 1999. In light of this conclusion, it follows that the trial court did not err in ultimately holding that appellants had failed to file the instant action within the four-year limitation for their claims of fraud, conversion, and intentional interference with an inheritance. Accordingly, appellants' second assignment of error is also without merit.
 {¶ 35} The judgment of the trial court is affirmed.
Rice, J., concurs, O'Toole, J., concurs in judgment only.
[1] In Firestone v. Galbreath (1993), 67 Ohio St.3d 87, 88, the Supreme Court of Ohio recognized that a claim for the intentional interference with an inheritance can be based on fraudulent behavior.