[Cite as *McDougal v. Vecchio*, 2012-Ohio-4287.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98003**

# FRANK MCDOUGAL

PLAINTIFF-APPELLANT

vs.

# DR. FRANK VECCHIO, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-744944

**BEFORE:** S. Gallagher, J., Sweeney, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 20, 2012

**ATTORNEYS FOR APPELLANT**

Richard E. Hackerd
David G. Oakley
2000 Standard Building
1370 Ontario Street
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

John F. McCaffrey
Adrienne B. Kirshner
McLaughlin & McCaffrey, LLP
1111 Superior Avenue
Suite 1350
Cleveland, OH   44114-2500

SEAN C. GALLAGHER, J.:

{¶1} Plaintiff-appellant, Frank McDougal, appeals from the trial court's order granting summary judgment in favor of defendant-appellee, the Dr. Frank Vecchio and Helen Williams Vecchio Foundation (the "Foundation"), on his claim for tortious interference with expectancy of inheritance. The trial court determined as a matter of law that McDougal's cause of action was time barred under the four-year statute of limitations set forth in R.C. 2305.09. For the reasons stated herein, we affirm the trial court's grant of summary judgment in the Foundation's favor.

{¶2} The parties do not dispute the facts of this case, excluding the allegations of fraud on behalf of the Foundation. They also do not challenge the application of the four-year statute of limitations or the discovery rule under R.C. 2305.09(C). In his sole assignment of error, McDougal challenges the trial court's use of one of three potential accrual dates in determining that he did not timely file his action.

{¶3} McDougal's aunt, Helen Vecchio, passed away on January 19, 1992. McDougal expected to receive an inheritance as a beneficiary to her trust. Relying on his prior conversations with his aunt, he expected to receive approximately $600 to $700 per month following the deaths of his mother, Angela McDougal, and uncle, Walter Clark Williams. McDougal learned from his mother, however, that he would not be receiving an inheritance, when she read him over the telephone a memorandum dated February 27,

1992, outlining Helen's estate plan ("Memorandum"). Both Helen, prior to her death, and McDougal's mother lived in Ohio whereas McDougal lived in Florida.

{¶4} The Memorandum set forth a summary of Helen's wills. In her 1979 and 1984 wills, Helen left the residue of her estate to seven charities. In 1985, the first codicil to Helen's 1984 will granted the residue of her estate to the Foundation's trustees for distribution to six charities. In addition to specific bequests in Helen's 1988 will, $350,000 was left to a trustee, Robert Tomaro, under the Revocable Trust Agreement dated August 24, 1984, as amended and restated on October 24, 1988. There were no changes to these arrangements in the first codicil to that will in 1991.

{¶5} The Memorandum also outlined Helen's October 24, 1988 Amended and Restated Trust Agreement. Pursuant to the agreement, if McDougal's mother was alive at the time of Helen's death, the $350,000 trust was to be administered by the Foundation as a charitable remainder trust for the benefit of McDougal's mother. Upon the death of McDougal's mother, the trust was to be divided and distributed to six charities. One of Helen's earlier revocable trust agreements instructed the trustee to distribute a unitrust amount to McDougal's mother and uncle, and to McDougal, if living at the time of Helen's death. McDougal was eliminated, however, as a beneficiary to the trust in Helen's First Amendment to Revocable Trust Agreement dated June 7, 1985.

{¶6} In March 1992, McDougal contacted the attorney in Cleveland who prepared the Memorandum and estate documents, Tomaro, now deceased, but then with the law firm of Arter & Hadden. McDougal previously lived in Cleveland and took care of

household items for his aunt until 1984 when he moved to Florida. Tomaro told McDougal that Helen was unhappy with his continued residency in Florida. She, therefore, directed Tomaro to remove McDougal as a beneficiary of the trust.

{¶7} McDougal contacted another attorney, and his mother took the estate documents to the attorney for further review. After this attorney told McDougal that he was properly removed as a beneficiary, McDougal did not pursue the matter. According to him, he "[a]cted like a man and walked away."

{¶8} McDougal's mother passed away in 2003. He traveled to Cleveland that year to clean out his mother's house. McDougal returned to Florida with boxes of documents taken from the house, and placed them in his attic without reviewing the boxes' contents.

{¶9} While cleaning out his attic in 2009, McDougal looked through the documents in his mother's boxes, and discovered Helen's estate plan. He took the estate plan to a handwriting expert. According to McDougal, the expert confirmed McDougal's suspicion of the forgery of Helen's signature on the trust agreement that created the Foundation in 1983.

{¶10} McDougal commenced this action against the Foundation on January 3, 2011. Appellant alleged that Tomaro exerted undue influence over Helen by preparing the forged trust agreement, physically forcing her to sign other documents, isolating her from friends and family, and taking advantage of her multiple illnesses and deteriorating eyesight. According to McDougal, Tomaro, as the Foundation's trustee, controlled the

Foundation and received extensive legal fees from it. The Foundation, now operated by the remaining trustees, continues to pay itself legal fees from the trust. McDougal also claimed that Tomaro's actions in creating the Foundation and accompanying trust documents, and forging and/or forcing Helen's signature on them, defeated Helen's true wish of having McDougal as one of her beneficiaries.

{¶11} The Foundation filed a motion for summary judgment on October 14, 2011. After McDougal filed a response on December 5, 2011, the trial court granted the Foundation's motion on January 25, 2012.

{¶12} McDougal now appeals from the trial court's grant of summary judgment in favor of the Foundation. He argues the court erred in using 2003, when he moved boxes from his mother's house to his attic, as the latest accrual date for the commencement of the applicable statute of limitations. McDougal argues the court should have used 2009, when he actually discovered Helen's allegedly forged and forced signatures in the estate documents. He argues, therefore, that he timely filed the action in January 2011.

{¶13} Appellate review of a trial court's decision on a motion for summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. Lapine Truck Sales & Equip.*, 124 Ohio App.3d 581, 706 N.E.2d 860 (8th Dist.1998). The court applies the following test:

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one

conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.

{¶14} *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201.

{¶15} The party moving for summary judgment bears the initial burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264. If the moving party satisfies that burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

{¶16} In his complaint, McDougal set forth one cause of action, intentional interference with expectancy of inheritance. The Supreme Court of Ohio set forth the elements of the tort:

> (1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference.

*Firestone v. Galbreath*, 67 Ohio St.3d 87, 88, 616 N.E.2d 202 (1993).

**{¶17}** R.C. 2305.09(C) provides for a four-year statute of limitations on causes of action alleging fraud. The Ohio Supreme Court has interpreted this statute to mean that the four-year limitations period commences to run when the complainant has discovered, or should have discovered in the exercise of reasonable diligence, the alleged fraud. *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 546 N.E.2d 206 (1989), paragraph 2b of the syllabus. Therefore, the question before this court is when McDougal knew or should have known about Helen's allegedly forged signature in the trust agreement, and her allegedly forced signature in other estate documents.

**{¶18}** Generally, the determination of when a plaintiff reasonably should have discovered the fraud necessarily involves questions of fact that would preclude resolution of the matter by summary judgment. *Thut v. Thut*, 11th Dist. No. 2000-G-2281, 2001 Ohio App. LEXIS 1748, 9 (Apr. 13, 2001); *Hamilton v. Ohio Sav. Bank*, 70 Ohio St.3d 137, 637 N.E.2d 887 (1994). *See also Cyrus v. Henes*, 89 Ohio App.3d 172, 623 N.E.2d 1256 (9th Dist.1993), *rev'd on other grounds*, 70 Ohio St.3d 640, 1994-Ohio-185, 640 N.E.2d 810. The law with respect to discovery is that

> [n]o more than a reasonable opportunity to discover the misrepresentation is required to start the period of limitations. Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence.

*Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 454, 635 N.E.2d 1326 (8th Dist.1993).

{¶19} The trial court identified three potential accrual dates for McDougal's claim: (1) 1992, when McDougal's aunt died and he learned of his disinheritance; (2) 2003, when McDougal removed the boxes containing the estate documents from his mother's house; or (3) 2009, when McDougal actually inspected the estate documents and discovered the suspected forgery and forced signatures.

{¶20} The Foundation asserted that McDougal's knowledge of the existence of the Foundation and his disinheritance should have alerted him to investigate further in 1992. Despite this knowledge, McDougal chose to ignore the Memorandum and the documents in the estate plan. The trial court found, however, the Foundation did not meet its burden that McDougal's cause of action accrued in 1992 because McDougal did not "ignore" the documents as he inquired about his disinheritance, unlike the disinherited party in *Marshall v. Silsby*, 11th Dist. No. 2004-L-094, 2005-Ohio-5609, a case relied on by the Foundation.

{¶21} In granting the Foundation's motion for summary judgment, the trial court found McDougal's claim accrued no later than 2003:

> In the present case, Plaintiff likewise [as in *Cline v. Cline*, 7th Dist. No. 05 CA 822, 2007-Ohio-1391] never requested to see the estate documents at the time that the will was probated. To make matters worse, Plaintiff took physical possession of these documents in 2003 and never reviewed them until 2009. The court finds that this was not reasonable diligence on Plaintiff's part. If Plaintiff truly had an expectancy of an inheritance, he would have reviewed the estate documents, at the latest, when he took physical possession of the documents in 2003. Therefore, the Court finds that Plaintiff's claim accrued no later than 2003. Because Plaintiff's complaint was not filed until 2011, Plaintiff's claim is time-barred by the statute of limitations.

**{¶22}** In *Cline*, Roger Cline's father died on May 10, 2000. The father executed a one-page form on June 6, 1997, that left his entire estate to his wife, Roger's stepmother. The stepmother was also the executor of the estate. The will was admitted into probate on October 3, 2000. *Id*. at ¶ 2.

**{¶23}** Roger was incarcerated at the time of his father's death and during the entire lower court proceedings. *Id*. at ¶ 4. On October 3, 2000, he signed a waiver of notice of probate of will as well as a waiver of notice of application to relieve estate. *Id*. at ¶ 6-7. The probate court relieved the estate from administration on the same day, and filed a final report of distribution on May 2, 2002. *Cline*, 7th Dist. No. 05 CA 822, 2007-Ohio-1391, ¶ 7.

**{¶24}** Roger filed a complaint in the probate court on May 4, 2005. He challenged the validity of the will by asserting his father's signature was a forgery. Roger, therefore, requested the trial court to set aside the May 2, 2002 entry, and award him a parcel of land in his father's estate. *Id*. at ¶ 8.

**{¶25}** The Seventh District Court of Appeals in *Cline* found that Roger did not allege any type of fraud concerning the will that could not have been discovered on October 3, 2000, the date the will was admitted into probate. Roger did not ask to see it, and he waived notice of the probate proceedings. *Id*. at ¶ 23. In opining Roger could have discovered the forgery when the will was admitted into probate, the appellate court stated: "The discovery rule is not available to those who could have discovered the basis of their injury, but fail to do so through neglect or willful avoidance." *Id*., citing

*Gleason v. Ohio Army Natl. Guard*, 142 Ohio App.3d 697, 702, 756 N.E.2d 1243 (10th Dist.2001). The appellate court concluded the probate court properly dismissed Roger's complaint because he was statutorily barred from challenging the validity of the will five years later, "and has alleged no fraud on Appellee's part that prevented him from examining the will in a timely manner." *Cline*, 7th Dist. No. 05 CA 822, 2007-Ohio-1391, ¶ 27.

**{¶26}** In the present case, McDougal learned about his disinheritance following his aunt's death in February 1992. Although he inquired about the disinheritance through a call to Helen's attorney in March 1992, and through another attorney's review of the estate documents, McDougal did not ask to see any of the estate documents. As in *Cline*, McDougal could have discovered the alleged forgery by asking to see the estate documents. The estate documents were in his mother's possession, and McDougal alleged no fraud on the Foundation's part that prevented him from seeing them in either 1992 or 2003.

**{¶27}** In light of the foregoing, and construing the evidence most strongly in McDougal's favor as we must under Civ.R. 56, we conclude reasonable minds can come to but one conclusion with that conclusion being adverse to McDougal. We, therefore, agree with the trial court's conclusion:

> The court finds that this was not reasonable diligence on Plaintiff's part. If Plaintiff truly had an expectancy of an inheritance, he would have reviewed the estate documents, at the latest, when he took physical possession of the documents in 2003.

**{¶28}** There remains no genuine issue of material fact as to when the statute of limitations period commenced to run on McDougal's cause of action. The Foundation is, therefore, entitled to judgment as a matter of law. *Zivich*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201.

**{¶29}** McDougal's assignment of error is overruled.

**{¶30}** The trial court's order granting summary judgment in favor of the Foundation on McDougal's claim is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

JAMES J. SWEENEY, P.J., and
EILEEN A. GALLAGHER, J., CONCUR