[Cite as *McDougal v. Dr. Frank Vecchio, Etc., Found.*, 2014-Ohio-4472.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100850**

---

# FRANK McDOUGAL

PLAINTIFF-APPELLANT

vs.

# DR. FRANK VECCHIO, ETC., FOUNDATION

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Court Division
Case No. 2013 ADV 187861

**BEFORE:** McCormack, J., Blackmon, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** October 9, 2014

**ATTORNEY FOR APPELLANT**

Richard E. Hackerd
Richard E. Hackerd, Attorney at Law
1370 Ontario Street
Suite 2000
Cleveland, OH 44113-1726


**ATTORNEYS FOR APPELLEE**

Adrienne B. Kirshner
John F. McCaffrey
Tucker Ellis L.L.P.
950 Main Avenue
Suite 1100
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Appellant Frank McDougal expected to receive an inheritance from his aunt, Helen Williams Vecchio. He helped her with her house for several years after her husband, Dr. Frank Vecchio, passed away in 1977. McDougal was originally in Mrs. Vecchio's will. Unbeknown to him, Mrs. Veccho had set up a foundation, the Dr. Frank Vecchio and Helen Williams Vecchio Foundation (the "Foundation"), in 1983, and had McDougal removed as a beneficiary in 1985. When Mrs. Vecchio passed away in 1992, McDougal learned, for the first time, that he was disinherited. He did not do anything about it, however, until 2011. In 2011, he filed a complaint against the Foundation in the general division of the common pleas court, asserting tortious interference with expectancy of inheritance. He alleged that he was improperly removed as a beneficiary as a result of fraudulent conduct by the Foundation's attorney. The trial court held that McDougal's claim was time barred. We affirmed that decision, in *McDougal v. Vecchio*, 8th Dist. Cuyahoga No. 98003, 2012-Ohio-4287.

{¶2} Soon after, McDougal filed the instant complaint in the probate court. Although he framed the action as one for a trust contest, he made the same allegation that he was improperly removed as a beneficiary because of fraudulent conduct committed by the Foundation's attorney. The probate court dismissed the case on the grounds of res judicata and statute of limitations. Finding no merit to the appeal, we affirm.

## Substantive Facts and Procedural History

{¶3}   McDougal provided assistance to his aunt Mrs. Vecchio after her husband Dr. Frank Vecchio passed away in 1977.   McDougal worked on her house and provided other help for several years until 1984, when he moved to Florida.

{¶4}   Mrs. Vecchio had two siblings: Angela McDougal (McDougal's mother) and Walter Clark Williams (McDougal's uncle).   In 1979, Mrs. Vecchio made a will. The will provided for gifts to several charities and funded an inter vivos trust with $300,000.   The inter vivos trust was for the benefit of Angela, and, upon Angela's death, for Walter and McDougal.

{¶5} In 1983, Mrs. Vecchio signed a trust agreement creating the Dr. Frank Vecchio and Helen Williams Vecchio Foundation.   The trust agreement was prepared by the Foundation's attorney, Robert Tomaro (now deceased).   According to McDougal, Tomaro forged Mrs. Vecchio's signature on this document.

{¶6}   In 1984, Mrs. Vecchio made a new will and signed a trust agreement, increasing the bequest for the inter vivos trust from $300,000 to $350,000.

{¶7} In 1985, Mrs. Vecchio signed a codicil to the 1984 will and granted her estate to the Foundation for distribution to several charities upon her death.   At the same time, she amended the 1984 trust.   This 1985 amended trust agreement eliminated McDougal as a beneficiary.   The document is the subject of the instant appeal.

{¶8} In 1988, McDougal's uncle, Walter, passed away. Following Walter's death, Mrs. Vecchio signed a new will and again amended prior trusts.   Pursuant to the terms of

the 1988 amended trust, if Angela was alive at the time of Mrs. Vecchio's death, the $350,000 trust was to be administered by the Foundation as a charitable remainder trust for the benefit of Angela. Upon Angela's death, the trust was to distributed to several charities.

{¶9} Mrs. Vecchio passed away on January 19, 1992. McDougal had expected to be one of her beneficiaries. Based on his prior conversations with Mrs. Vecchio, he expected to receive $600 to $700 per month after the passing of Walter and Angela. After Mrs. Vecchio passed away, McDougal, for the first time, learned from Angela that he had been disinherited. Over the telephone, Angela read to McDougal an estate memorandum drafted by the Foundation's attorney Tomaro. The memorandum summarized Mrs. Vecchio's various wills and trust agreements, including the 1988 amended trust reflecting McDougal's disinheritance.

{¶10} Upon learning of Mrs. Vecchio's estate plan, McDougal contacted Tomaro. Tomaro told McDougal that Mrs. Vecchio was unhappy with McDougal's continued residency in Florida and she directed Tomaro to remove McDougal as a beneficiary of the trust.

{¶11} After talking to Tomaro, McDougal contacted another attorney. McDougal's mother, Angela took the estate documents to that attorney for further review. That attorney told McDougal that McDougal was properly removed as a beneficiary. McDougal did not pursue the matter. According to McDougal, he "[a]cted like a man and walked away."

**{¶12}** Eleven years later, in 2003, Angela passed away. McDougal traveled to Cleveland that year to clean out Angela's house and returned to Florida with boxes of documents taken from her house. He placed them in his attic without reviewing the boxes' contents.

**{¶13}** Six years later, while cleaning out his attic in 2009, McDougal looked through his mother's boxes and saw documents relating to Mrs. Vecchio's estate plan. He took the estate plan to a handwriting expert. According to McDougal, the expert confirmed his suspicion that Mrs. Vecchio's signature on the 1983 trust agreement that created the Foundation was forged.[1]

### The First Litigation

**{¶14}** In January 2011, McDougal filed a lawsuit in the general division of the common pleas court against the Foundation. He accused its attorney Robert Tomaro of the following: exerting undue influence over Mrs. Vecchio, forging the 1983 trust agreement that created the Foundation, physically forcing Mrs. Vecchio to sign other estate documents, isolating her from friends and family, and taking advantage of her multiple illnesses and deteriorating eyesight. McDougal claimed that Tomaro's actions defeated Mrs. Vecchio's true wish of having McDougal as one of her beneficiaries. *Id*. at ¶ 10.

---

[1] The foregoing facts are adopted from *McDougal*, 8th Dist. Cuyahoga No. 98003, 2012-Ohio-4287, at ¶ 3-9.

{¶15} The Foundation moved for summary judgment, contending McDougal's claim was time barred. The trial court agreed. First, the trial court determined the applicable statute of limitations was R.C. 2305.09(C). This statute provides four-year statutory period for raising a fraud claim. Furthermore, the trial court applied the discovery rule. Under the discovery rule, the four-year period begins to run when the complainant has discovered or should have discovered, in the exercise of reasonable diligence, the alleged fraud. *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 546 N.E.2d 206 (1989).

{¶16} Applying the discovery rule, the trial court held that the statute of limitations began to run in 2003, when McDougal took physical possession of the estate documents. The trial court reasoned that at this time he should have discovered, in the exercise of reasonable diligence, the purported fraud. Therefore, the statute of limitations expired four years after 2003. Because his lawsuit was filed untimely, in 2011, the trial court granted summary judgment in favor of the Foundation.

{¶17} McDougal appealed that decision. This court affirmed. We framed the question on appeal as: when McDougal knew or should have known about Mrs. Vecchio's allegedly forged signature in the 1983 trust agreement creating the Foundation and her allegedly forced signature in other estate documents. *McDougal* at ¶ 17.

{¶18} We noted McDougal learned about his disinheritance after Mrs. Vecchio died in 1992. Although he inquired about the disinheritance through a telephone call to Tomaro soon after her death in 1992, and also had another attorney review the estate

documents, he did not ask to see any of the estate documents. We reasoned that McDougal could have discovered the alleged forgery by asking to see the estate documents, which were in his mother's possession. We agreed with the trial court that McDougal should have exercised reasonable diligence and reviewed the estate documents, at the latest, when he took physical possession of the documents in 2003. Therefore, his claim expired four years later, in 2007.

### The Instant Litigation

{¶19} Our decision in the first litigation was issued on September 20, 2012. Seven months later, on April 8, 2013, McDougal filed another lawsuit, this time in the probate court. In the previous action, he alleged the 1983 trust agreement creating the Foundation was forged. In the instant action, he contested the validity of the 1985 amended trust agreement, the document that eliminated him as a beneficiary.

{¶20} McDougal claimed the 1985 document (and all other subsequent documents) contained a forged signature. He alleged that the 1985 document was kept separate from the other estate planning documents, and, as a result, he did not discover the document until April 2011, when it was produced by the Foundation during the discovery of the first case.

{¶21} McDougal cited R.C. 2305.121 as the statutory authority allowing him to contest the validity of the 1985 amended trust agreement. He claimed that, because R.C. 2305.121 has a two-year statute of limitations, his lawsuit was timely because it was filed within two years of his knowledge of this document.

{¶22} The Foundation filed a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. The trial court granted the motion. The court found that the claim in the first litigation arose out of the same occurrence that was the subject matter of the present action — alleged fraudulent conduct by the Foundation's attorney causing McDougal's removal as a beneficiary. The trial court therefore concluded res judicata barred the relitigation. In addition, the trial court determined that, even if the second action was not precluded, it would still be dismissed for being untimely.

{¶23} McDougal appealed the trial court's decision, raising the following two assignments of error:

1. The trial court incorrectly found as a matter of law that the statute of limitations ran on an ORC 2305.121 action to contest a trust amendment in 2007, notwithstanding that McDougal first learned about the amendment on April 6, 2011.

2. The trial court denied McDougal his statutory right to contest an invalid, hidden, and forged trust amendment when it held that res judicata barred the doors to the probate court (ORC 2305.121) for an "essentially identical claim."

## Motion to Dismiss

{¶24} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim tests the sufficiency of the complaint. *Assn. for the Defense of the Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116-117, 537 N.E.2d 1292 (1989). Our review of the trial court's determination is de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. A trial court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the

nonmoving party. *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 104, 661 N.E.2d 218 (8th Dist.1995). In order for the trial court to grant a motion to dismiss for failure to state a claim, it must appear beyond a doubt that the plaintiff can prove no set of facts in support of the asserted claim that would entitle the plaintiff to relief. *O'Brien v. Univ. Commt. Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

## Res Judicata

{¶25} In the first complaint, McDougal pleaded the cause of action of tortious interference with expectancy of inheritance. In the second complaint, he framed the action as one to contest the validity of the 1985 amendment pursuant to R.C. 2305.121. The trial court held that res judicata barred the second suit. We agree.

{¶26} The doctrine of res judicata in Ohio encompasses two related concepts: (1) claim preclusion, also known as res judicata or estoppel by judgment, and (2) issue preclusion, also known as collateral estoppel. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6.

{¶27} This case involves the concept of claim preclusion. In *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), the Supreme Court of Ohio held that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Id.* at syllabus. The term "transaction" was defined in *Grava* to encompass events that arise from a "common nucleus of operative facts." *See Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488, 490, 756 N.E.2d 657 (2001). "Claim

preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998).

{¶28} McDougal framed the instant lawsuit as an action under R.C. 2305.121 to contest the validity of the 1985 trust amendment. We note that statute was renumbered in 2007 as R.C. 5806.04 ("Statute of limitations for actions concerning certain revocable trusts; distribution of trust property"). R.C. 5806.04 provides a two-year statute of limitations for "actions pertaining to a revocable trust that is made irrevocable by the death of the settlor of the trust." R.C. 5806.04(A).

{¶29} McDougal alleged that he did not know about the 1985 document until April 6, 2011. Therefore, he claimed the second action, filed on April 8, 2012, was within the two-year statutory time.

{¶30} First, by the statute's own provision, the statute applies only to revocable trusts that are made irrevocable by the death of the settlor of the trust if the settlor dies on or after July 23, 2002, the effective date of the statute. R.C. 5806.04(D). Mrs. Vecchio died in 1992.

{¶31} Second, in determining what causes of actions a plaintiff has alleged in a complaint, the courts are required to look to the "actual nature or subject matter pleaded in the complaint," rather than "labels" used to identify a particular cause of action.

*Blackburn v. Am. Dental Ctrs.*, 10th Dist. Franklin No. 10AP-958, 2011-Ohio-5971, ¶ 24, citing *Funk v. Rent-All Mart, Inc.*, 91 Ohio St.3d 78, 80, 742 N.E.2d 127 (2001).

**{¶32}** Whether pleaded as the common law claim of tortious interference with expectancy of inheritance,[2] or a purported statutory claim of contesting the validity of a trust, the two actions filed by McDougal raised essentially the same claim, to wit, fraud. The claim in the two cases arose out of a "common nucleus of operative facts," namely, fraudulent conduct by the Foundation's attorney resulting in his disinheritance. Thus, res judicata bars the second action, despite the pleading of a different cause of action.

**Statute of Limitations**

**{¶33}** It appears McDougal pleaded a different cause of action in the second action to circumvent the four-year statute of limitations for fraud. We note that the courts, including this court, have held that the applicable statute of limitations for a claim is determined from the "gist of the complaint," and not from "the label that a party may assign to a set of facts." *Dottore v. Vorys, Sater, Seymour & Pease, L.L.P.*, 8th Dist.

---

[2]The elements of a claim of tortious interference with expectancy of inheritance are

(1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference.

*Firestone v. Galbreath*, 67 Ohio St.3d 87, 88, 616 N.E.2d 202 (1993).

Cuyahoga No. 98861, 2014-Ohio-25, ¶ 34, citing *Hibbett v. Cincinnati*, 4 Ohio App.3d 128, 131, 446 N.E.2d 832 (1st Dist.1982).

**{¶34}** Despite McDougal's attempt to label his second action as one for trust contest, the real ground of his claim was, as in the first case, fraud committed by the Foundation's attorney resulting in his disinheritance. As we have already determined in the first appeal, the statute of limitations had run on his claim four years after 2003, when he took possession of the estate documents that revealed his removal as a beneficiary. Just like the first action, the second action was untimely as well. The trial court was correct.

**{¶35}** The first and second assignments of error are both without merit. The judgment of the probate court granting appellee Foundation's motion to dismiss is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

PATRICIA ANN BLACKMON, P.J., and
MELODY J. STEWART, J., CONCUR