[Cite as *Figgie v. Figgie*, 2025-Ohio-451.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SUSAN A. FIGGIE, ET AL.,                :

    Plaintiffs-Appellants,        :

    v.                            :

BETSY FIGGIE, ET AL.,                   :

    Defendants-Appellees.         :

Nos. 113752 and 113753

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 13, 2025

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Probate Division
Case Nos. 2019ADV024885 and 2018ADV239801

---

### *Appearances:*

Reminger Co., L.P.A., Brian D. Sullivan, and Timothy J. Gallagher; McDonald Hopkins, LLC, and Franklin C. Malemud, for *appellants* Harry E. Figgie, IV, Catherine E. Figgie, and Susan A. Figgie.

UB Greensfelder LLP, Michael N. Ungar, Steven S. Kaufman, Robin M. Wilson, and Ashytn N. Saltz; Calfee, Halter, & Griswold LLP, Mitchell G. Blair, Colleen M. O'Neil, Zachary J. Stackhouse, and Nicholas M. Hudnell, *for appellee* Clark-Reliance Corporation.

MARY J. BOYLE, P.J.:

{¶ 1}   In this consolidated appeal, plaintiffs-appellants, Harry E. Figgie, IV ("Harry IV"), Catherine E. Figgie ("Katie"), and Susan A. Figgie ("Susie") (collectively referred to as "plaintiffs"), appeal the probate court's grant of summary judgment in favor of defendant-appellee, Clark-Reliance Corporation ("CRC"), a company created by their grandfather, Harry E. Figgie, Jr. ("Harry Jr.").[1]  Plaintiffs raise the following two assignments of error for review:

> **Assignment of Error I:**  The probate court improperly granted CRC summary judgment.

> **Assignment of Error II:**  The probate court improperly concluded that Plaintiffs' claims were time barred.

{¶ 2}   For the reasons set forth below, we affirm the probate court's judgment.

## I.  Facts and Procedural History

{¶ 3}   The crux of this appeal is plaintiffs' claim that they were defrauded when shares of CRC stock held in the 1983 Trust settled by their father, Harry E. Figgie, III ("Harry III"), were redeemed by CRC in a securities transaction that occurred more than 20 years ago, in 2001 (the "Transaction"), between CRC and, Wilmington Trust, the then-trustee of the 1983 Trust, of which the plaintiffs were beneficiaries.  CRC claims that the plaintiffs, as trust beneficiaries, were not parties to the Transaction at issue, CRC was not a fiduciary, had no duty to disclose, and

---

[1] This appeal is consolidated with the appeal in *Harry E. Figgie, et al. v. Betsy Figgie, et al.*, 8th Dist. Cuyahoga No. 113753.

made no misrepresentation of material fact and that plaintiffs' fraud claim is time barred by the statute of limitations. We find CRC's argument regarding the statute of limitations persuasive.

{¶ 4} CRC is a closely held company owned by the Figgie family. Harry Jr. was the chairman of CRC's board of directors, and the CRC shares were owned by Harry Jr., his wife, Nancy, and their three children, Harry III, Mark, and Matthew. In the early 90s, Harry III took over the company. Harry III established a trust in 1983 ("the 1983 Trust"). Harry III and Harry Jr. eventually had a "falling out." Prior to this, Harry III asked Harry Jr. to serve as trust advisor for anything relating to the 1983 Trust's ownership of CRC stock. Harry III died unexpectedly in December 1999. Wilmington Trust became trustee of the 1983 Trust in the summer of 2000. Harry Jr. remained as trust advisor, with the power to make all decisions about the CRC stock.

{¶ 5} According to plaintiffs, Harry Jr. wanted to divest the 1983 Trust of the CRC stock because of Harry Jr.'s disdain for Harry III and did so by manufacturing a lawsuit involving plaintiffs and Harry III's wife and executor of his estate, Kathy Bliven ("Bliven"), "to determine who would be responsible for paying Harry III's [E]state debts." (Plaintiffs' appellate brief, p. 10.) Plaintiffs contend that the main issue in this lawsuit ("2000 Case") was whether the 1983 Trust had any responsibility to pay Harry III's Estate debts, or if such debts were the responsibility of another trust that Harry III established in 1997 ("1997 Trust"). Harry III's Estate consisted of a last will and testament, the 1983 Trust, and the 1997 Trust. The

beneficiaries of the two trusts included plaintiffs and Bliven. KeyBank served as the Trustee of the 1997 Trust. According to plaintiffs, "the goal of the lawsuit was to satisfy Harry Jr.'s expectations. Harry Jr. and CRC would later utilize this lawsuit as the rationale for the supposed need to sell the [1983 Trust's] CRC stock in 2001." (Plaintiffs' appellate brief, p. 10.) Plaintiffs allege that Harry Jr. selected the attorney to represent them, and his selection was not in their best interest. At that time, Harry IV was 18, Katie was 17, and Susie "was institutionalized" because she is "developmentally disabled." (Plaintiffs' appellate brief, p. 3-4.)

{¶ 6} Ultimately, Bliven liquidated assets to settle Harry III's Estate. A significant debt of the Estate that Bliven was concerned about was an estate tax liability payable from the 1983 Trust. Thus, Bliven, in her capacity as Executor, advised Wilmington Trust that the CRC stock held by the 1983 Trust would need to be liquidated in order to address the needs of the Estate. Plaintiffs disagreed with Bliven's decision and filed an adversarial case in 2001 ("2001 Case") in probate court. In response to this case, Bliven, as named defendant, filed a counterclaim against plaintiffs seeking an order for the "Sale of Closely Held Interests," which included the CRC stock held by the 1983 Trust.

{¶ 7} The CRC stock in the 1983 Trust was subject to a 1985 Share Purchase Agreement ("Share Purchase Agreement") that would give CRC and the Figgie family members a right of first refusal to buy any shareholder's CRC stock if a shareholder desired to sell to someone other than CRC or another shareholder. In addition to seeking a court order to sell the CRC stock, Bliven allegedly contacted a

third-party broker to ask him to sell the CRC stock and advised him that she was asking for a court order to sell said stock. Because of Bliven's request to sell the CRC stock held by the 1983 Trust, CRC acknowledged the request and confirmed the applicability of the Share Purchase Agreement. Thereafter, Wilmington Trust, as Trustee of the 1983 Trust, agreed to the formula purchase price, as determined by the Share Purchase Agreement, for the CRC shares held in the 1983 Trust. Bliven, as a beneficiary of the 1983 Trust and Executor, likewise agreed to the sale and purchase price through her counsel. Plaintiffs, each represented by counsel, additionally advised the Trustee that they had no objection to the sale of the CRC stock pursuant to the terms in the Share Purchase Agreement. At that time, there were no objections or concerns raised regarding the execution of the Transaction and no challenges to the purchase price.

{¶ 8} Thereafter, on September 20, 2001, CRC purchased the shares from Wilmington Trust for a total purchase price of $1,909,007.70. The probate court approved the global settlement, and all parties (CRC was not a party to this litigation), including plaintiffs, or their representatives, personally signed the settlement agreement. The court then issued an order dismissing both cases with prejudice on July 10, 2003.

{¶ 9} Plaintiffs now contend that Harry Jr. facilitated this sale of the CRC shares at below fair market value, and if the stock was redeemed at its fair market value in 2001, it would have been worth around $3,000,000. Plaintiffs allege that fraudulent nature of the CRC stock purchase became apparent to Mark when he

learned that Harry Jr.'s (his father) statements were false. Mark was the only surviving Figgie family member who was on CRC's board when it authorized the stock redemption in 2001. According to Mark, "it wasn't made known to the board at the time of the redemption that I later found out weren't true, the things that I didn't know that I know now, and there were some things that were told to us as a board that weren't true at the time." (Deposition, p. 61.) Mark stated:

> My dad had told everyone that the 1983 trust didn't have the cash and the wherewithal to pay the taxes and that they had to buy the stock back because the tax — in order to pay their taxes, and it turns out there was enough money in the trust to do that, and that the cash flow — the Clark-Reliance redemption was actually — well, let me walk you through this.
>
> The Clark-Reliance redemption paid them the 1.9 with an initial payment and then a 10-year payout, but what they actually got taxed for by the IRS finally was 2.4, and they got the tax payment due right away so the Clark stock payment redemption didn't even put in enough cash to pay the Clark stock tax responsibility, and that the Clark stock tax responsibility was paid out of some of the insurance proceeds.
>
> So they didn't need to sell the Clark stock. They had enough with the insurance proceeds to pay off the taxes on this, and then they could have kept the stock, and they would have had an ongoing cash flow because as we were getting the distributions for the defective trust to pay off the stock that Matthew and I had been gifted, they would have continued to get an income from Clark-Reliance.
>
> So they would have done better to hold onto the stock, not only the future value of the stock, but the income flow from the defective trust.

(Deposition, p. 68-69.)

{¶ 10} According to the plaintiffs, Mark believed that the misrepresentations were motivated by Harry Jr.'s animus towards plaintiffs and his desire to regain control over CRC:

> I think that my father was upset enough about the defective trust and the fact that he was losing control of the stock or the voting control, they were having to pay out income pari passu to the 1983 trust and that they had to convert over to an S Corp, that he not only fired Bottger and Deloitte & Touche, but he then found the opportunity to buy the stock back at a discount over 10 years and get Harry's kids out of the picture and gain control of the voting percentage again, stopped paying out the money to the 1983 trust, and it was a very well created fraud, I think.

(Deposition, p. 67.)

{¶ 11} Plaintiffs claim that they did not learn of this fraudulent scheme until after Thanksgiving 2018 when Harry IV's aunt asked him about the value of CRC stock. This prompted Harry IV to inquire about the 2001 sale of CRC stock with his Uncle Mark. According to Harry IV, Mark told him "he didn't recall what we got for our shares, but that it was an egregiously low valuation, and that he wasn't sure what Nancy got for hers, but she had sold shares right around the same time that we did." (Deposition, p. 88-89.)

{¶ 12} Shortly thereafter, on December 20, 2018, Plaintiffs initiated the underlying matter filing a complaint seeking to recover money and damages from the 2001 redemption of the CRC stock. Plaintiffs assert claims for declaratory judgment, fraud, tortious interference with expectancy of inheritance, unjust enrichment, constructive trust, and civil conspiracy.

{¶ 13} By way of an amended complaint, plaintiffs allege that CRC improperly redeemed its stock from the 1983 Trust for a transaction that was initiated and directed by Harry Jr. Plaintiffs further allege that, at the time of the stock redemption, "Harry Jr. was a member of CRC's board of directors and an

officer of the corporation and that he was operating under numerous conflicts of interest by virtue of his conflicting obligations arising from his absolute control over CRC, his position as trust advisor to the Harry III Trust, and his personal animus toward [p]laintiffs." (Plaintiffs' appellate brief, p. 5.) Plaintiffs allege that CRC did not properly value its stock and that Harry Jr. "manipulated and/or relied on manipulated data to artificially deflate the value of the CRC shares for the benefit of CRC and to Plaintiffs' detriment." (Plaintiffs' appellate brief, p. 5.) Plaintiffs further allege that CRC misrepresented and concealed the truth and that the redemption of the shares of CRC were purchased by CRC for a price below fair market value and for the benefit of CRC.

{¶ 14} Plaintiffs allege that CRC and Harry Jr. had a duty to disclose the valuations that were relied upon in the redemption of the CRC stock, the valuations were manipulated, the Share Purchase Agreement was deflated and below fair market value, and the misleading information was knowingly relied on in forming or accepting the terms of the stock redemption. Plaintiffs further allege that their representatives justifiably relied upon the manipulated data to their detriment. Plaintiffs allege that they did not learn of the fraudulent redemption until November 25, 2018.

{¶ 15} After initial motion practice disposed of several of plaintiffs' claims, CRC moved for summary judgment on plaintiffs' claims for (1) declaratory judgment (which requested a determination that the 2001 redemption of CRC stock was below value and caused a loss to the plaintiffs, and the improper benefits and proceeds

from the redemption are in the possession, control, and ownership of CRC); (2) fraud (by CRC as it relates to the CRC stock redemption transaction in 2001); (3) civil conspiracy; (4) constructive trust; and (5) unjust enrichment as to Susie only. CRC argued that plaintiffs' remaining claims were time barred and that plaintiffs' fraud claim was not supported by sufficient evidence.[2] Plaintiffs opposed CRC's motion for summary judgment, arguing that their claims were not time barred because the discovery of the material facts were delayed by CRC's misrepresentations and concealment of the truth.

{¶ 16} In a thorough and well-written opinion, the probate court found that CRC's motion was well-taken and granted summary judgment. The probate court detailed the lengthy, procedural history of the matter, including the two previous matters filed in probate court surrounding the debts owed by the Harry III Trust and the 2001 sale of its CRC shares. With regard to the fraud claim, the court found that the plaintiffs failed to establish, with particularity, any false statement or fraudulent misrepresentations made by a representative of CRC, such as Harry Jr., as Chairman and CEO of CRC, on which plaintiffs relied. "Specifically, Plaintiffs

---

[2] We note that in 2021, this court issued *Figgie v. Figgie*, 2021-Ohio-1195 (8th Dist.), and *Figgie v. Figgie*, 2021-Ohio-1812 (8th Dist.), appeals filed by Harry IV and Katie and Susie, in the underlying matter, against defendant, Brent Ballard, as co-Trustee of the Harry E. Figgie, Jr. Trust Agreement dated July 15, 1976, as amended, Trustee of the Nancy F. Figgie Trust Agreement dated September 7, 1976, as amended, and Trustee of the Matthew P. Figgie Trust Agreement dated October 20, 1985, as amended (collectively, the "Trust Defendants"). On appeal, this court affirmed the probate court's decision granting the Trust Defendants' Civ.R. 12(B)(6) motion to dismiss Harry IV, Katie, and Susie's claims for fraud, tortious interference with expectancy of inheritance, unjust enrichment, and constructive trust arising out of the CRC share redemption.

have failed to identify a particular time and place that such a false statement was made to them and upon which they relied regarding the redemption of CRC stock or its valuation, as Plaintiffs themselves were not directly involved in the transaction." (Judgment Entry Feb. 22, 2024.) As to plaintiffs' assertion that CRC "acted fraudulently by creating the illusion" that the 1983 Trust was insolvent so that the CRC stock would be sold, the court found that it was "Bliven as Executor, and not a representative of CRC, who alleged that the Estate was insolvent and that there were potential tax implications." (Judgment Entry Feb. 22, 2024.) In addition, the court found that plaintiffs failed to identify or plead, with particularity, any statements or representations Harry Jr., as a representative of CRC, made to Bliven, that caused her to file the counterclaims in the 2001 Case seeking the sale of the CRC stock to a third party, which triggered the Share Purchase Agreement.

{¶ 17} The court concluded that plaintiffs failed to establish fraud because plaintiffs' "allegations are that third parties, such as the Trustee, Executor, and/or various attorneys in the redemption transaction, relied on misrepresentations made by Harry Figgie, Jr. on behalf of CRC." (Judgment Entry, Feb. 22, 2024.) Furthermore, the plaintiffs failed to plead, with particularity, any material fact that they justifiably relied on or that was concealed by CRC regarding the CRC stock redemption transaction. "Specifically, the transaction was between CRC and the Trustee Wilmington Trust, and not the Plaintiffs. Thus, as Plaintiffs were not privy to the transaction, there was no misrepresentation of facts that Plaintiffs relied on or that were concealed from them." (Judgment Entry, Feb. 22, 2024.)

{¶ 18} In addition, the probate court found that plaintiffs' fraud claim was barred by the four-year statute of limitations set forth in R.C. 2305.09(C). The court did not agree with plaintiffs' assertion that they did not discover the fraud until November 2018 because plaintiffs were parties in the 2001 counterclaim filed by Bliven where she sought a court order to sell the shares of CRC stock held by the 1983 Trust and a September 2001 letter from plaintiffs' attorney to Wilmington Trust stated that plaintiffs had no objection to the redemption of the shares of CRC stock held in the 1983 Trust pursuant to the terms of the Share Pursuant Agreement. Furthermore, the 1983 Trust began receiving distributions in 2001 for the purchase of the CRC stock redemption, which continued annually until the year 2010. Additionally, plaintiffs had access to all Trust statements, documents, and correspondence as early as 2009, and Harry IV was appointed as Susie's guardian in 2006, which granted him the right to full access to documents detailing the assets of the 1983 Trust on her behalf. Based upon the foregoing, the court concluded that plaintiffs "could have discovered, in the exercise of reasonable diligence, any alleged fraud by CRC thereby barring their claim for fraud in their Complaint due to the statute of limitations." (Judgment Entry, Feb. 22, 2024.)

{¶ 19} The court further found that the five-year statute of limitations for the sale of securities under R.C. 1707.43(B) also time barred plaintiffs' fraud claim. The court found that R.C. 1707.43(B) applies because plaintiffs' claims arise from alleged misrepresentations made with respect to the sale and purchase of securities in 2001,

and the allegations in plaintiffs' complaint are "inextricably interwoven" with the sale of securities.

{¶ 20} Having found that plaintiffs failed to establish their fraud claim, the court additionally found that plaintiffs' civil-conspiracy claim fails as a derivative claim that cannot be maintained without fraud. The court likewise found that Susie's unjust-enrichment claim fails because plaintiffs failed to establish that the Transaction was fraudulent. The court also found that plaintiffs' constructive-trust claim fails because plaintiffs failed to establish the elements of fraud, civil conspiracy, and unjust enrichment.

{¶ 21} Based on the foregoing, the probate court found plaintiffs' declaratory judgment action a nullity because they failed to establish fraud, civil conspiracy, or unjust enrichment and dismissed the plaintiffs' declaratory judgment. The court then granted CRC's motion for summary judgment and dismissed plaintiffs' first amended complaint.

{¶ 22} It is from this order that plaintiffs now appeal.

## II.  Law and Analysis

### Summary Judgment Standard of Review

{¶ 23} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). In a de novo review, this court affords no deference to the trial court's decision and independently reviews the record to determine whether the denial of summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.).

{¶ 24} Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.*, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217 (1994).

{¶ 25} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293.

{¶ 26} "Because summary judgment represents a shortcut through the normal litigation process by avoiding a trial, the burden is strictly upon the moving party to establish, through the evidentiary material permitted by the rule, that there is no genuine issue of material fact and that [the moving party] is entitled to judgment as a matter of law. Civ. R. 56(C)." *Angus v. Blue Cross & Blue Shield*, 1992 Ohio App. LEXIS 3935, *8 (8th Dist. July 30, 1992).

{¶ 27} Within their two assigned errors, plaintiffs argue that the probate court incorrectly concluded that no disputed facts existed in support of their claims because they presented evidence that (1) they were defrauded by the elaborate

scheme of a powerful and wealthy family member to purchase their CRC stock below market value by misrepresenting the need to liquidate and concealing the true valuations of the stock, which resulted in the loss of millions of dollars and a role in their family business and (2) CRC concealed its fraud until November 2018 at which time plaintiffs were placed on notice of the need to investigate the circumstances of the Transaction, discovered the fraud, and then timely filed the underlying matter.

{¶ 28} With this in mind, we begin by addressing the second assignment of error first because it is dispositive of the matter.

**Statute of Limitations**

{¶ 29} In the second assignment of error, plaintiffs argue the probate court improperly concluded that their claims were time barred because they presented evidence that CRC was successful in concealing its fraud until their discovery in 2018.

{¶ 30} The elements of fraud are "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Friedland v. Lipman*, 68 Ohio App.2d 255 (8th Dist. 1980), paragraph one of the syllabus; *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169 (1984).

{¶ 31} R.C. 2305.09(C) provides that a fraud action shall be brought within four years. The statute does not begin to run, however, until the cause of action accrues. Under R.C. 2305.09, the cause of action does not accrue until the fraud is discovered. "The Ohio Supreme Court has interpreted this statute to mean that the four-year limitations period commences to run when the complainant has discovered, or should have discovered in the exercise of reasonable diligence, the alleged fraud." *McDougal v. Vecchio*, 2012-Ohio-4287, ¶ 17 (8th Dist.), citing *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176 (1989), paragraph 2b of the syllabus. Therefore, the question before this court is when plaintiffs knew or should have known, in the exercise of reasonable diligence, about Harry Jr.'s alleged scheme to "create the mirage of a solicited offer under the false premise that the 1983 Trust was insolvent and in dire need of liquidity to pay taxes and expenses, and subject to potential third-party buyers" for the sole purpose of redeeming the CRC shares at below fair market value. (Judgment Entry, Feb. 22, 2024.)

{¶ 32} "Generally, the determination of when a plaintiff reasonably should have discovered the fraud necessarily involves questions of fact that would preclude resolution of the matter by summary judgment." *McDougal* at ¶ 18, citing *Thut v. Thut*, 2001 Ohio App. LEXIS 1748, *9 (11th Dist. Apr. 13, 2001); *Hamilton v. Ohio Sav. Bank*, 70 Ohio St.3d 137 (1994); *Cyrus v. Henes*, 89 Ohio App.3d 172 (9th Dist. 1993). In *McDougal*, this court stated that the law with respect to discovery is that

> "[n]o more than a reasonable opportunity to discover the misrepresentation is required to start the period of limitations. Information sufficient to alert a reasonable person to the possibility of

wrongdoing gives rise to a party's duty to inquire into the matter with due diligence."

*Id.*, quoting *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 454 (8th Dist. 1993). Here, in granting CRC's motion for summary judgment, the probate court found that the plaintiffs' fraud claim accrued no later than 2001. We agree.

{¶ 33} In the instant case, there is no dispute that plaintiffs initiated the 2001 Case and were parties in the 2001 counterclaim filed by Bliven, where she sought a court order to sell the shares of CRC stock held by the 1983 Trust. In addition, there is no dispute that plaintiffs' attorney sent a letter to Wilmington Trust in September 2001, stating that plaintiffs had no objection to the redemption of the shares of CRC stock held in the 1983 Trust. Also, there were no challenges to the purchase price. As a result of the sale, the 1983 Trust began receiving distributions in 2001, which continued annually until the year 2010. In addition, plaintiffs had access to all trust statements, documents, and correspondence as early as 2009 and Harry IV was appointed as Susie's guardian in 2006, which granted him the right to full access to documents detailing the assets of the 1983 Trust on her behalf.

{¶ 34} Plaintiffs contend that the fraud claim is not time barred because they were not aware of the fraud until November 2018, when Harry inquired about the 2001 sale of CRC stock with his Uncle Mark and they timely filed their complaint in December 2018. Although Harry IV inquired from his uncle in late 2018, it does not change the fact that the shares of stock involved in the alleged fraud were the same

shares of stock at issue in the 2000 Case and 2001 Case; the plaintiffs were represented by counsel and consented to the redemption; plaintiffs received annual distributions from the redemption for ten years; and plaintiffs had access to all trust documents.

{¶ 35} In light of the foregoing, and construing the evidence most strongly in plaintiffs' favor, we conclude reasonable minds can come to but one conclusion, with that conclusion being adverse to the plaintiffs. We agree with the probate court:

> Based upon the foregoing instances and information, Plaintiffs had knowledge of the CRC stock redemption that, if using ordinary care and thoughtfulness, would alert a reasonable person to investigate the possibility that fraud may have occurred. Thus, based upon all the foregoing events, Plaintiffs could have discovered, in the exercise of reasonable diligence, any alleged fraud by CRC thereby barring their claim for fraud in their Complaint due to the statute of limitations.

(Judgment entry, Feb. 22, 2024.) There remains no genuine issue of material fact as to when the statute of limitations period commenced to run on plaintiffs' fraud claim. CRC is entitled to judgment as a matter of law

{¶ 36} The probate court further found, and we agree, that plaintiffs' fraud claim is also time barred by the five-year statute of limitations for the sale of securities under R.C. 1707.43(B), which provides:

> No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period.

{¶ 37} In the matter before us, plaintiffs' claims arise from alleged misrepresentations made with respect to the sale and purchase of securities, and the allegations in plaintiffs' complaint are "inextricably interwoven" with the sale of securities. The five-year statute of limitations applies to plaintiffs' claims because their claims arise from alleged misrepresentations made with respect to the sale and purchase of securities. Therefore, the fraud claim is additionally time barred under R.C. 1707.43(B) because the CRC stock was sold in 2001.

{¶ 38} Having found that summary judgment is proper on the plaintiffs' fraud claim, we likewise find that their civil conspiracy, unjust enrichment, constructive trust claims fail as a matter of law.

{¶ 39} To maintain a claim of civil conspiracy, a plaintiff must demonstrate "(1) a malicious combination of two or more persons, (2) causing injury to another person or property, and (3) the existence of an unlawful act independent from the conspiracy itself." *Syed v. Poulos*, 2016-Ohio-3168, ¶ 28 (8th Dist.), citing *Kenty v. Transamerica Premium Ins. Co.*, 1995-Ohio-61. "An underlying unlawful act must be committed in order to establish an action for civil conspiracy." *Id.*, citing *O'Brien v. Olmsted Falls*, 2008-Ohio-2658 (8th Dist.). In the instant case, plaintiffs allege that the unlawful act underlying their claim for civil conspiracy is fraud and that CRC and Harry Jr.'s fraudulent conduct in devising the 2001 redemption of the CRC stock was due to a civil conspiracy. We note that "'[a] civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy.'" *Arnoff v. PAJ Ents., LLC*, 2022-Ohio-1759, ¶ 18 (8th

Dist.), quoting *Adams v. Margarum*, 2017-Ohio-2741, ¶ 21 (10th Dist.). Because plaintiffs' civil-conspiracy claim is based upon their fraud claim, and their fraud claim is time barred, we find that their civil-conspiracy claim necessarily fails.

{¶ 40} Similarly, Susie's unjust-enrichment claim alleges that CRC's fraudulent conduct resulted in the redemption of the CRC stock. In order to demonstrate a claim for unjust enrichment, it must be proven that (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant retained that benefit under circumstances in which it would be unjust to do so without payment. *Sterling Contracting, LLC v. Main Event Ent., LP*, 2022-Ohio-2138, ¶ 19 (8th Dist.), citing *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, ¶ 20, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). In this matter, because plaintiffs' fraud claim is time barred, Susie's claim for unjust enrichment also fails.

{¶ 41} Lastly, with regard to plaintiffs' constructive-trust claim, we note that a constructive trust "is an equitable remedy to unjust enrichment and fraud." *Baillis v. Ross*, 2012-Ohio-705, ¶ 33 (8th Dist.). Here, plaintiffs' fraud claim is time barred, and as such, their constructive-trust claim fails as a matter of law.

{¶ 42} Accordingly, the second assignment of error is overruled.

{¶ 43} In the first assignment of error, plaintiffs argue that genuine issues of material fact exist in support of their fraud claim. Having found that plaintiffs' fraud claim is time barred by the statute of limitations, we overrule this assigned error as moot. App.R. 12.

**{¶ 44}** Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
SEAN C. GALLAGHER, J., CONCUR