[Cite as *Weitzel v. Flight Servs. & Sys., Inc.*, 2025-Ohio-2867.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

ROBERT P. WEITZEL,          :

    Plaintiff-Appellant,      :

                                     No. 114644

v.                        :

FLIGHT SERVICES & SYSTEMS, INC.,  :
ET AL.,

    Defendants-Appellants.    :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:** August 14, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-943529

---

### *Appearances:*

Zagrans Law Firm LLC and Eric H. Zagrans, *for appellant.*

Tucker Ellis LLP, Lindsey E. Sacher, Melissa Z. Kelly, and Ariana E. Bernard, *for appellees* Flight Services & Systems, Inc., and Robert Philip Armstrong.

Winter│Trimacco Co., LPA, and Jason D. Winter, *for appellees* International Total Services, Inc., and Jeanette R. Weitzel.

SEAN C. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant Robert P. Weitzel ("Weitzel") appeals the trial court's decisions granting partial summary judgment and summary judgment against him. He also challenges the trial court's denial of a motion for reconsideration. Upon review, we reverse the decision granting summary judgment on Count 1 for breach of a written employment contract in favor of defendant-appellee Flight Services & Systems, Inc., and we remand the matter solely on that count and as to that defendant. We otherwise affirm.

{¶ 2} On February 1, 2021, Weitzel filed a complaint against defendants-appellees Flight Services & Systems, Inc. ("FSS"), Robert Philip Armstrong ("Armstrong"), International Total Services, Inc. ("ITS"), and Jeanette R. Weitzel ("Jeanette"), as well as other defendants not involved in this appeal.[1] Weitzel raised claims for breach of a written employment contract, wrongful discharge in violation of public policy, violation of Ohio corporation law, breach of fiduciary duty, fraudulent misrepresentation and fraud in the inducement, and conversion.

{¶ 3} Relative to the rulings challenged on appeal, on March 10, 2021, appellees and other defendants filed a first motion for partial summary judgment. They argued the tort claims were time-barred because the statute of limitations had expired on the face of the verified complaint or, alternatively, had expired as

---

[1] Several defendants were dismissed from the action during the course of the trial-court proceedings. Defendant Robert A. Weitzel, appellant's father, passed away during the pendency of the case.

to certain defendants who were not parties to an earlier 2018 action that had been voluntarily dismissed without prejudice less than a year before the filing of this action. Weitzel opposed the motion. A second motion for partial summary judgment was filed on February 21, 2022, in which the movants incorporated their earlier arguments and further argued that "despite [Weitzel's] assertion of the discovery rule, the statute of limitations for *all* of his tort claims expired as to *all* defendants long before the filing of the 2018 Action" and that even if the savings statute applied, the claims would still be time-barred.

{¶ 4} On September 15, 2023, the trial court granted partial summary judgment against Weitzel on all of his tort claims, which were set forth under Counts 2 through 6 of the complaint. The trial court noted only Count 1, which asserted breach of a written employment contract, remained pending. Weitzel later filed a motion for reconsideration of the interlocutory decision granting partial summary judgment, and that motion was denied by the trial court on November 20, 2024.

{¶ 5} On July 15, 2024, two motions for summary judgment were filed against Weitzel's remaining claim for breach of a written employment contract. Among other arguments, ITS, Jeanette, and Armstrong all maintained they could not be held liable because they were not parties to Weitzel's 2006 employment agreement with FSS. FSS and Armstrong also argued there was no breach of the 2006 Agreement. Weitzel opposed the motions. The trial court granted both motions on November 20, 2024.

{¶ 6} Weitzel timely filed this appeal. He raises three assignments of error for review, under which he challenges the aforementioned rulings.

{¶ 7} Under his first assignment of error, Weitzel claims the trial court erred by granting summary judgment against him on his claim for breach of his employment contract with FSS. Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 2016-Ohio-8374, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3] viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 2012-Ohio-5336, ¶ 12.

{¶ 8} Weitzel's claim for breach of contract alleges that the appellees breached the "written contract of employment between FSS and [Weitzel]" ("the 2006 Agreement") by "terminating [Weitzel's] employment with FSS on January 31, 2014, without cause . . . ." and "denying him the continuing remuneration and benefits to which he was entitled under that agreement." As Weitzel asserts on appeal, he "refiled his Complaint for breach of contract against FSS because it failed to pay the two years' continuation of salary and benefits to which he [alleges] he was contractually entitled when he was fired . . . ."

{¶ 9} Article II of the 2006 Agreement establishes an at-will employment relationship and states in part as follows:

**2.1** **Employment At-Will**.   The employment relationship between [Weitzel] and [FSS] is at-will.  [Each party] shall have the right to terminate the employment relationship at any time and for any reason whatsoever, with or without cause, and without any liability or obligation except as may be expressly provided in this Agreement.

**2.2** **Notice of Termination**.  If [FSS] or [Weitzel] desires to terminate [Weitzel's] employment hereunder, it or he shall do so by giving written notice (subject to the terms of Section 4.1 and 4.2, as applicable) . . . .

{¶ 10}  Section 4.1 of the 2006 Agreement sets forth FSS's right to terminate

Weitzel's employment under the agreement and provides in pertinent part as

follows:

**4.1** **Company's Right to Terminate**.   Company, acting pursuant to an express resolution of the Board of Directors of Company (the "Board of Directors"), shall have the right to terminate [Weitzel's] employment under this Agreement at any time . . . (iii) for cause, which . . . shall mean [Weitzel's] gross negligence or willful misconduct in the performance of . . . the material duties and services required of him pursuant to this Agreement; (iv) for [Weitzel's] material breach of any provision of this Agreement which, if correctable, remains uncorrected for sixty (60) days following receipt by [Weitzel] of written notice by [FSS] of such breach; or (v) for any other reason whatsoever in the sole discretion of the [FSS] Board of Directors[, which amounts to an involuntary termination pursuant to Section 5.4(ii)], provided that [Weitzel] is provided with at least sixty (60) days prior written notice of termination under this Section 4.1(v).

{¶ 11}  Section 5.1 of the 2006 Agreement sets forth the effect of termination

on compensation and provides in part:

**5.1** **Effect on Compensation.**   Upon termination of the employment relationship by [Weitzel] or [FSS], regardless of the reason therefor, all compensation and all benefits to [Weitzel] hereunder shall terminate . . . except that: if such termination shall constitute an Involuntary Termination, then, subject to [certain provisions] (1) [FSS] shall provide [Weitzel] and his eligible dependents with Continuation Coverage (as such term is defined in paragraph 5.4) for the Severance Period (as such term is defined in

paragraph 5.4 [in monthly installments over the 24 months immediately following termination.]

{¶ 12} In moving for summary judgment on Weitzel's claim for breach of contract, ITS and Jeanette asserted that Weitzel had admitted that they are not liable to him in contract by failing to respond to requests for admissions, and they also argued that they are not in fact parties to the 2006 Agreement. FSS and Armstrong argued in their motion that Armstrong cannot be liable because he is not a party to the 2006 Agreement. They further argued that FSS did not breach the 2006 Agreement because Weitzel rejected an offer for continued employment and any alleged termination was "for cause" such that no severance was owed. Both motions included an alternative argument pertaining to a reduction of damages by amounts paid to Weitzel following the end of his employment. Similar arguments are made on appeal.

{¶ 13} In opposing summary judgment, Weitzel did not dispute the absence of a contractual relationship with ITS, Jeanette, or Armstrong. Though Weitzel claimed in his complaint that ITS should be held liable as FSS's "parent corporation," a parent corporation is generally not liable for the actions of its subsidiary. *See Starner v. Guardian Indus.*, 143 Ohio App.3d 461, 468 (10th Dist. 2001). Further, Weitzel did not establish any means by which Jeanette, as a director and/or the corporate secretary for FSS or ITS, or Armstrong, as a director and/or corporate officer for FSS or ITS, may be held individually liable. Generally, "'shareholders, officers, and directors will . . . not be held personally liable for the

acts of a corporation.'" *LaMusga v. Summit Square Rehab, LLC*, 2017-Ohio-6907, ¶ 29 (9th Dist.), quoting *Charvat v. Farms Ins. Columbus, Inc.*, 2008-Ohio-4353, ¶ 21; *see also Bizfunds, LLC v. Jetmo, Inc.*, 2023-Ohio-81, ¶ 30 (8th Dist.); *J.D.S. Properties v. Walsh*, 2009-Ohio-367, ¶ 18 (8th Dist.). Weitzel also did not establish any alternative theory upon which liability could be imposed upon these parties. We are not persuaded by his argument on appeal for expanding Ohio law to recognize a cognizable breach-of-contract claim in this matter. We conclude as a matter of law that ITS, Jeanette, and Armstrong are entitled to summary judgment on this claim.

{¶ 14} As to FSS, it is undisputed, and the record shows, that Weitzel and FSS were parties to the 2006 Agreement. Weitzel's father, Robert A. Weitzel, as then chairman and chief executive officer for FSS, executed the agreement for FSS. Appellant, Robert P. Weitzel, who was president of FSS, signed the agreement as the "Executive."

{¶ 15} FSS argued in part that any alleged failure to pay severance to Weitzel was not a breach of the 2006 Agreement because it claimed "FSS did not terminate Weitzel's employment as alleged, but instead offered him continued employment, which Weitzel rejected[.]" As such, FSS maintained that Weitzel voluntarily chose to end his employment. Weitzel presented evidence showing that the new employment agreement that he declined to enter was with ITS, not FSS, and that he was terminated by FSS under the existing 2006 Agreement with FSS. The record shows that on January 27, 2014, the board of directors of FSS voted to terminate Weitzel's employment with FSS and to remove him as president of FSS.

He received a letter of termination from corporate counsel for FSS on January 31, 2014, stating his "employment has been terminated for cause" pursuant to the 2006 Agreement between Weitzel and FSS. He then received monthly payments from FSS for a period of ten months. Viewing the evidence in Weitzel's favor, we find that reasonable minds could determine that Weitzel did not voluntarily choose to end his employment. We find that summary judgment for FSS is not warranted on this basis.

{¶ 16} FSS also argued that any alleged termination under the 2006 Agreement was "for cause," such that no severance was owed under the terms of the 2006 Agreement. Pursuant to section 4.1 of the 2006 Agreement, "for cause" means "[Weitzel's] gross negligence or willful misconduct in the performance of . . . the material duties and services required of him pursuant to this Agreement." Though the 2006 Agreement defines certain terms, it does not define the terms "gross negligence" or "willful misconduct." Absent a definition of those terms in the 2006 Agreement, "the Court must apply the traditional legal definition." *See Ventech Sols., Inc. v. Ohio AG*, 2020-Ohio-476, ¶ 10 (Ct. of Cl.); *see also Developers Diversified Realty v. Coventry Real Estate Fund II, L.L.C.*, 2012-Ohio-1056, ¶ 21 (8th Dist.). However, FSS failed to sufficiently set forth an argument under those terms as they are defined under Ohio law. It is not for this court to develop arguments for the parties on appeal.

{¶ 17} FSS asserted that Weitzel was the president for FSS and his job duties included building customer relationships and promoting the growth of FSS,

yet he engaged in a pattern of conduct that led multiple customers to believe he was not advancing or representing their interests. According to Armstrong's affidavit, Armstrong became aware of key airline and airport customers who expressed dissatisfaction with Weitzel's business practices and Weitzel's involvement in FSS's business dealings with those customers. Armstrong provided examples, and he averred that some customers spoke of their dissatisfaction with Weitzel, expressed a refusal to deal with Weitzel, and/or refused to award FSS contracts unless Weitzel was not a part of FSS. FSS asserted that Weitzel's conduct harmed FSS's image with its customers and contributed to FSS's inability to grow as a business. Following these complaints, Weitzel was asked to sign a new employment agreement, which he declined. FSS continued to maintain that Weitzel was terminated from his employment for cause and that Weitzel's conduct at a minimum rose to the level of gross negligence.

{¶ 18} Weitzel argued that his termination was not "for cause" under the terms of the 2006 Agreement, and he provided evidence in support of his claim. He maintained that the alleged "cause" was a false pretext and that the actual reason for his discharge was because he had refused an alleged demand of his father, Robert A. Weitzel, for him to commit perjury in connection with a separate lawsuit against FSS. According to the verified complaint, Weitzel's father was the chief executive officer and chairman of the board of FSS and ITS, a majority shareholder of ITS, and a director and officer of ITS and FSS. Weitzel also pointed to his interest in the company and his financial stake in its future success and

growth. Additionally, he argued that he was terminated after he refused to accept a new employment agreement with ITS. We find there is evidence in the record establishing that there are genuine issues of material fact on the breach-of-contract claim against FSS.

{¶ 19} As argued by Weitzel, in this case, at the very least, the question of whether Weitzel's conduct amounts to "gross negligence" and/or "willful misconduct" under Ohio law and upon the facts of this case is a jury question. Though FSS claims Weitzel's termination was for cause pursuant to the 2006 Agreement, when viewing the record in a light most favorable to Weitzel, we find reasonable minds could find otherwise. Moreover, we do not find FSS established that it is entitled to judgment as a matter of law on Weitzel's claim for breach of a written employment contract. There also remain issues as to whether FSS breached the 2006 Agreement by failing to pay severance benefits for the period required and/or by failing to provide 60 days' prior written notice of termination. Although the parties raised arguments pertaining to offset or reduction of damages, we find it would be premature to address those arguments or make any determination regarding damages herein. However, we note that appellant's counsel conceded at oral argument that any potential damages should be reduced by amounts already paid.

{¶ 20} Accordingly, the first assignment of error is sustained only as to the grant of summary judgment in favor of FSS on Count 1 of the complaint. It is overruled as to the other appellees.

{¶ 21} Under his second assignment of error, Weitzel claims the trial court erred by granting partial summary judgment against him on his tort claims raised in Counts 3, 4, 5, and 6 of his complaint. Under his third assignment of error, he claims the trial court erred in denying his motion for reconsideration in relation to that interlocutory decision. Upon review, we find appellees are entitled to summary judgment on these claims.

{¶ 22} The record reflects that Weitzel initially filed an action on January 18, 2018. The case was voluntarily dismissed without prejudice pursuant to Civ.R. 41(A)(1)(a) on February 20, 2020. The current action was filed on February 1, 2021. Weitzel reasserted his claim for breach of contract against FSS, which was subject to an eight-year statute of limitations. He also reasserted several tort claims, but he added a new claim for breach of Ohio corporation law. According to Weitzel, his tort claims, which are each subject to a four-year statute of limitations, "arose from actions by the ITS Defendants that deprived Plaintiff, a minority shareholder of ITS, of the ownership of more than 2,250,000 shares of ITS stock he [asserts] he actually owned."

{¶ 23} Appellees moved for partial summary judgment on the tort claims. Among their arguments, they asserted that regardless of application of the savings statute, which they did not concede, the statute of limitations for all of the tort claims expired as to all defendants before the filing of the earlier 2018 action. After the trial court granted partial summary judgment on all the non-contract claims, Weitzel sought reconsideration of the interlocutory decision and asserted the

claims asserted in Counts 3 though 6 of the complaint against ITS, FSS, and Jeanette, all of whom were parties to the prior action, were not time-barred. The trial court denied the motion for reconsideration.

{¶ 24} Upon our review, we find the savings statute, R.C. 2305.19, does not apply to the claims asserted against Armstrong, who was not named as a defendant in the second amended complaint in the 2018 action that was voluntarily dismissed. *See Ralich v. Lowrey*, 2002-Ohio-3408, ¶ 18 (9th Dist.); *see also Crawford v. Medina Gen. Hosp.*, 1997 Ohio App. LEXIS 3744, *6 (9th Dist. Aug. 20, 1997). Further, with regard to appellant's new claim for violation of Ohio corporation law, we recognize that no such claim was alleged in the earlier action, and appellant failed to sufficiently demonstrate that the savings statute may be invoked for this claim. Additionally, regardless of any application of the savings statute, as to all the appellees we find all the tort claims challenged on appeal were not brought within the applicable statute of limitations. We are not persuaded by any of appellant's arguments otherwise.

{¶ 25} Count 4 of the complaint is for breach of fiduciary duty. Because this claim is based on fraud, the discovery rule applies to the claim. *See Meehan v. Mardis*, 2019-Ohio-4075, ¶ 15 (1st Dist.). The discovery rule also applies to Count 5 for fraudulent misrepresentation and fraud in the inducement, as well as to Count 6 for conversion. *See* R.C. 2305.09; *Barley v. Fitcheard*, 2008-Ohio-6159, ¶ 13 (8th Dist.). As explained in *Barley,*

> The discovery rule requires the occurrence of a "cognizable event" which leads or should lead the plaintiff to believe that he has been injured and thus places him on notice of the need to pursue his remedies. *Flowers v. Walker*[, 63 Ohio St.3d 546, 549 (1992)]; *Kiefer v. Mark Domo, D.D.S., Inc.*, [2006-Ohio-445 (8th Dist)]. "A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations. Rather, the 'cognizable event' itself puts the plaintiff on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies." *Flowers*, supra, at 549. It is the constructive knowledge of facts, rather than actual knowledge of their legal significance, that is enough to start the statute of limitations running under the discovery rule. *Id*.

*Id*. at ¶ 13.

{¶ 26} As to the claims that are based upon fraud, generally, the determination of when a plaintiff reasonably should have discovered the fraud for the purposes of commencing the running of the statute of limitations "'involves questions of fact that would preclude resolution of the matter by summary judgment.'" *See Figgie v. Figgie*, 2025-Ohio-451, ¶ 32 (8th Dist.), quoting *McDougal v. Vecchio*, 2012-Ohio-4287, ¶ 17 (8th Dist.); *see also Hamilton v. Ohio Savs. Bank*, 70 Ohio St.3d 137, 140 (1994). However, as this court has recognized, "'[n]o more than a reasonable opportunity to discover the misrepresentation is required to start the period of limitations'" and "'[i]nformation sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence.'" *McDougal* at ¶ 18, quoting *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 454 (8th Dist. 1993); *see also Figgie* at ¶ 32. Further, the "[f]ailure to exercise due diligence when documentary evidence is available and known to the plaintiff which should put him on notice of fraud does

not prevent the running of a fraud statute of limitations." *Zemcik v. Lapine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 588 (8th Dist. 1997). "'Once sufficient indicia of misrepresentation are shown, a party cannot rely on its unawareness or the efforts of the opposition to lull it into a false sense of security to toll the period of limitations.'" *Id.*, quoting *Craggett* at 454. Likewise, "a claim for conversion must be brought within four years after the date on which plaintiff discovered, or in the exercise of reasonable care should have discovered, that the property had been converted." *Barley* at ¶ 13, citing R.C. 2305.09.

{¶ 27} According to the verified complaint in this matter, Weitzel signed a 2007 Share Exchange Agreement as president and as a shareholder of FSS. That agreement was declared "void ab initio" as part of a settlement of a lawsuit filed by another shareholder of ITS. In the fall of 2010, the parties agreed to reinstate the Share Exchange Agreement retroactively to its original effective date. Weitzel claims there were alleged discrepancies concerning the number of his ITS shares in the reinstatement agreement, of which he was aware before he signed the reinstatement agreement. He nonetheless signed the reinstatement agreement because, as he maintains, his father needed it for a board meeting and promised to afterward make changes to correct the number of shares. Weitzel states that he trusted his father's word, despite his assertion that his father had asked him to commit perjury. Weitzel further claims he was unaware that a correction never occurred until he received a letter on October 1, 2014, regarding the purported

corporate redemption of his ITS stock as a result of his prior termination of employment.

{¶ 28} However, appellees provided evidence showing that Weitzel knew of the alleged discrepancies in the reinstatement agreement in 2010 when he executed the reinstated agreement; yet he did not inquire thereafter as to whether the agreement had been changed to reflect the number or percentage of ITS shares to which he claimed to be entitled. The 2007 Share Exchange Agreement provides that a "modification or amendment of this agreement is effective only if it is in writing and executed by all the parties." Weitzel admitted he never signed any written document purporting to change the number of shares of ITS he would receive under the terms of the reinstatement agreement, and he admitted he never received any document signed by an officer or agent of FSS or ITS purporting to change the number of shares under the agreement. Also, the record reflects Weitzel had access to corporate records that would have reflected his shares in ITS.

{¶ 29} Thus, to the extent the discovery rule may be applied, appellees established that the subject tort claims accrued in 2010 and were not timely. As argued by appellees and supported by the record, "Weitzel knew or should have known that the alleged promise [by his father] had not been kept" and "he would have known this fact had he performed the required due diligence." Weitzel cannot rely on his own unawareness to establish his claims were not time-barred.

{¶ 30} We have reviewed all the arguments raised and the evidence presented regarding the tort claims challenged on appeal. We find no genuine

issues of material fact exist on Counts 3 through 6. In light of the record and construing the evidence most strongly in Weitzel's favor, we conclude reasonable minds can come to but one conclusion with that conclusion being adverse to Weitzel. We are not persuaded by Weitzel's arguments otherwise on appeal. Appellees are entitled to summary judgment on these claims as a matter of law. Additionally, we do not find the trial court abused its discretion in denying appellant's motion for reconsideration of the entry of partial summary judgment. The second and third assignments of error are overruled.

{¶ 31} Upon review, we reverse the decision granting summary judgment on Count 1 for breach of a written employment contract in favor of FSS, and we remand the matter solely on that count and as to that defendant. We otherwise affirm.

It is ordered that appellant and appellee FSS share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, A.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)